# CHIMEL *v.* CALIFORNIA.

No. 770.  Argued March 27, 1969.—
Decided June 23, 1969.

*Keith C. Monroe,* by appointment of the Court, 394 U. S. 940, argued the cause and filed briefs for petitioner.

*Ronald M. George,* Deputy Attorney General of California, argued the cause for respondent. With him on the brief were *Thomas C. Lynch,* Attorney General, and *William E. James,* Assistant Attorney General.

MR. JUSTICE STEWART delivered the opinion of the Court.

This case raises basic questions concerning the permissible scope under the Fourth Amendment of a search incident to a lawful arrest.

The relevant facts are essentially undisputed. Late in the afternoon of September 13, 1965, three police officers arrived at the Santa Ana, California, home of the petitioner with a warrant authorizing his arrest for the burglary of a coin shop. The officers knocked on the door, identified themselves to the petitioner's wife, and asked if they might come inside. She ushered them into the house, where they waited 10 or 15 minutes until the petitioner returned home from work. When the petitioner entered the house, one of the officers handed him the arrest warrant and asked for permission to "look around." The petitioner objected, but was advised that

"on the basis of the lawful arrest," the officers would nonetheless conduct a search. No search warrant had been issued.

Accompanied by the petitioner's wife, the officers then looked through the entire three-bedroom house, including the attic, the garage, and a small workshop. In some rooms the search was relatively cursory. In the master bedroom and sewing room, however, the officers directed the petitioner's wife to open drawers and "to physically move contents of the drawers from side to side so that [they] might view any items that would have come from [the] burglary." After completing the search, they seized numerous items—primarily coins, but also several medals, tokens, and a few other objects. The entire search took between 45 minutes and an hour.

At the petitioner's subsequent state trial on two charges of burglary, the items taken from his house were admitted into evidence against him, over his objection that they had been unconstitutionally seized. He was convicted, and the judgments of conviction were affirmed by both the California Court of Appeal, 61 Cal. Rptr. 714, and the California Supreme Court, 68 Cal. 2d 436, 439 P. 2d 333. Both courts accepted the petitioner's contention that the arrest warrant was invalid because the supporting affidavit was set out in conclusory terms,[1] but held that since the arresting officers had procured the warrant "in good faith," and since in any event they had had sufficient information to constitute probable cause for the petitioner's arrest, that arrest had been lawful. From this conclusion the appellate courts went on to hold that the search of the petitioner's home

---

[1] The affidavit supporting the warrant is set out in the opinion of the Court of Appeal, 61 Cal. Rptr., at 715–716, n. 1, and the State does not challenge its insufficiency under the principles of *Aguilar* v. *Texas,* 378 U. S. 108, and *Spinelli* v. *United States,* 393 U. S. 410.

had been justified, despite the absence of a search warrant, on the ground that it had been incident to a valid arrest. We granted certiorari in order to consider the petitioner's substantial constitutional claims. 393 U. S. 958.

Without deciding the question, we proceed on the hypothesis that the California courts were correct in holding that the arrest of the petitioner was valid under the Constitution. This brings us directly to the question whether the warrantless search of the petitioner's entire house can be constitutionally justified as incident to that arrest. The decisions of this Court bearing upon that question have been far from consistent, as even the most cursory review makes evident.

Approval of a warrantless search incident to a lawful arrest seems first to have been articulated by the Court in 1914 as dictum in *Weeks* v. *United States,* 232 U. S. 383, in which the Court stated:

> "What then is the present case? Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. It is not an assertion of the right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime." *Id.,* at 392.

That statement made no reference to any right to search the *place* where an arrest occurs, but was limited to a right to search the "person." Eleven years later the case of *Carroll* v. *United States,* 267 U. S. 132, brought the following embellishment of the *Weeks* statement:

> "When a man is legally arrested for an offense, whatever is found upon his person *or in his control* which it is unlawful for him to have and which may be used to prove the offense may be seized and held

as evidence in the prosecution." *Id.,* at 158. (Emphasis added.)

Still, that assertion too was far from a claim that the "place" where one is arrested may be searched so long as the arrest is valid. Without explanation, however, the principle emerged in expanded form a few months later in *Agnello* v. *United States,* 269 U. S. 20—although still by way of dictum:

> "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. See *Carroll* v. *United States,* 267 U. S. 132, 158; *Weeks* v. *United States,* 232 U. S. 383, 392." 269 U. S., at 30.

And in *Marron* v. *United States,* 275 U. S. 192, two years later, the dictum of *Agnello* appeared to be the foundation of the Court's decision. In that case federal agents had secured a search warrant authorizing the seizure of liquor and certain articles used in its manufacture. When they arrived at the premises to be searched, they saw "that the place was used for retailing and drinking intoxicating liquors." *Id.,* at 194. They proceeded to arrest the person in charge and to execute the warrant. In searching a closet for the items listed in the warrant they came across an incriminating ledger, concededly not covered by the warrant, which they also seized. The Court upheld the seizure of the ledger by holding that since the agents had made a lawful arrest, "[t]hey had a right without a warrant contemporaneously to search the place in order to find and seize the things used to carry on the criminal enterprise." *Id.,* at 199.

That the *Marron* opinion did not mean all that it seemed to say became evident, however, a few years later in *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, and *United States* v. *Lefkowitz,* 285 U. S. 452. In each of those cases the opinion of the Court was written by Mr. Justice Butler, the author of the opinion in *Marron.* In *Go-Bart,* agents had searched the office of persons whom they had lawfully arrested,[2] and had taken several papers from a desk, a safe, and other parts of the office. The Court noted that no crime had been committed in the agents' presence, and that although the agent in charge "had an abundance of information and time to swear out a valid [search] warrant, he failed to do so." 282 U. S., at 358. In holding the search and seizure unlawful, the Court stated:

> "Plainly the case before us is essentially different from *Marron* v. *United States,* 275 U. S. 192. There, officers executing a valid search warrant for intoxicating liquors found and arrested one Birdsall who in pursuance of a conspiracy was actually engaged in running a saloon. As an incident to the arrest they seized a ledger in a closet where the liquor or some of it was kept and some bills beside the cash register. These things were visible and accessible and in the offender's immediate custody. There was no threat of force or general search or rummaging of the place." 282 U. S., at 358.

This limited characterization of *Marron* was reiterated in *Lefkowitz,* a case in which the Court held unlawful a search of desk drawers and a cabinet despite the fact that the search had accompanied a lawful arrest. 285 U. S., at 465.

The limiting views expressed in *Go-Bart* and *Lefkowitz* were thrown to the winds, however, in *Harris* v. *United*

---

[2] The Court assumed that the arrests were lawful. 282 U. S., at 356.

*States,* 331 U. S. 145, decided in 1947. In that case, officers had obtained a warrant for Harris' arrest on the basis of his alleged involvement with the cashing and interstate transportation of a forged check. He was arrested in the living room of his four-room apartment, and in an attempt to recover two canceled checks thought to have been used in effecting the forgery, the officers undertook a thorough search of the entire apartment. Inside a desk drawer they found a sealed envelope marked "George Harris, personal papers." The envelope, which was then torn open, was found to contain altered Selective Service documents, and those documents were used to secure Harris' conviction for violating the Selective Training and Service Act of 1940. The Court rejected Harris' Fourth Amendment claim, sustaining the search as "incident to arrest." *Id.,* at 151.

Only a year after *Harris,* however, the pendulum swung again. In *Trupiano* v. *United States,* 334 U. S. 699, agents raided the site of an illicit distillery, saw one of several conspirators operating the still, and arrested him, contemporaneously "seiz[ing] the illicit distillery." *Id.,* at 702. The Court held that the arrest and others made subsequently had been valid, but that the unexplained failure of the agents to procure a search warrant—in spite of the fact that they had had more than enough time before the raid to do so—rendered the search unlawful. The opinion stated:

> "It is a cardinal rule that, in seizing goods and articles, law enforcement agents must secure and use search warrants wherever reasonably practicable. . . . This rule rests upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed upon such activities. . . . To provide the necessary security against unreasonable intrusions upon the private lives of

individuals, the framers of the Fourth Amendment required adherence to judicial processes wherever possible. And subsequent history has confirmed the wisdom of that requirement.

.     .     .     .     .

"A search or seizure without a warrant as an incident to a lawful arrest has always been considered to be a strictly limited right. It grows out of the inherent necessities of the situation at the time of the arrest. But there must be something more in the way of necessity than merely a lawful arrest." *Id.*, at 705, 708.

In 1950, two years after *Trupiano*,[3] came *United States* v. *Rabinowitz,* 339 U. S. 56, the decision upon which California primarily relies in the case now before us. In *Rabinowitz,* federal authorities had been informed that the defendant was dealing in stamps bearing forged overprints. On the basis of that information they secured a warrant for his arrest, which they executed at his one-room business office. At the time of the arrest, the officers "searched the desk, safe, and file cabinets in the office for about an hour and a half," *id.,* at 59, and seized 573 stamps with forged overprints. The stamps were admitted into evidence at the defendant's trial, and this Court affirmed his conviction, rejecting the contention that the warrantless search had been unlawful. The Court held that the search in its entirety fell within the principle giving law enforcement authorities "[t]he right 'to search the place where the arrest is made in order to find and seize things connected with the crime . . . .' " *Id.,* at 61. *Harris* was regarded as "ample authority" for that conclusion. *Id.,* at 63. The opinion rejected the rule of *Trupiano* that "in seizing goods and articles, law enforcement agents must secure and use search war-

---

[3] See also *McDonald* v. *United States,* 335 U. S. 451.

rants wherever reasonably practicable." The test, said the Court, "is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *Id.,* at 66.

*Rabinowitz* has come to stand for the proposition, *inter alia,* that a warrantless search "incident to a lawful arrest" may generally extend to the area that is considered to be in the "possession" or under the "control" of the person arrested.[4] And it was on the basis of that proposition that the California courts upheld the search of the petitioner's entire house in this case. That doctrine, however, at least in the broad sense in which it was applied by the California courts in this case, can withstand neither historical nor rational analysis.

Even limited to its own facts, the *Rabinowitz* decision was, as we have seen, hardly founded on an unimpeachable line of authority. As Mr. Justice Frankfurter commented in dissent in that case, the "hint" contained in *Weeks* was, without persuasive justification, "loosely turned into dictum and finally elevated to a decision." 339 U. S., at 75. And the approach taken in cases such as *Go-Bart, Lefkowitz,* and *Trupiano* was essentially disregarded by the *Rabinowitz* Court.

Nor is the rationale by which the State seeks here to sustain the search of the petitioner's house supported by a reasoned view of the background and purpose of the Fourth Amendment. Mr. Justice Frankfurter wisely pointed out in his *Rabinowitz* dissent that the Amendment's proscription of "unreasonable searches and sei-

---

[4] Decisions of this Court since *Rabinowitz* have applied the abstract doctrine of that case to various factual situations with divergent results. Compare *Ker* v. *California,* 374 U. S. 23, 42; *Abel* v. *United States,* 362 U. S. 217; and *Draper* v. *United States,* 358 U. S. 307, with *Kremen* v. *United States,* 353 U. S. 346 (*per curiam*). Cf. *Chapman* v. *United States,* 365 U. S. 610; *Jones* v. *United States,* 357 U. S. 493, 499–500.

zures" must be read in light of "the history that gave rise to the words"—a history of "abuses so deeply felt by the Colonies as to be one of the potent causes of the Revolution . . . ." 339 U. S., at 69. The Amendment was in large part a reaction to the general warrants and warrantless searches that had so alienated the colonists and had helped speed the movement for independence.[5] In the scheme of the Amendment, therefore, the requirement that "no Warrants shall issue, but upon probable cause," plays a crucial part. As the Court put it in *McDonald* v. *United States,* 335 U. S. 451:

> "We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. . . . And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." *Id.,* at 455–456.

---

[5] See generally *Boyd* v. *United States,* 116 U. S. 616, 624–625; *Weeks* v. *United States,* 232 U. S. 383, 389–391; *Davis* v. *United States,* 328 U. S. 582, 603–605 (dissenting opinion); *Harris* v. *United States,* 331 U. S. 145, 157–162 (dissenting opinion); *Stanford* v. *Texas,* 379 U. S. 476, 481–482.

Even in the *Agnello* case the Court relied upon the rule that "[b]elief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause." 269 U. S., at 33. Clearly, the general requirement that a search warrant be obtained is not lightly to be dispensed with, and "the burden is on those seeking [an] exemption [from the requirement] to show the need for it . . . ." *United States* v. *Jeffers,* 342 U. S. 48, 51.

Only last Term in *Terry* v. *Ohio,* 392 U. S. 1, we emphasized that "the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure," *id.,* at 20,[6] and that "[t]he scope of [a] search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Id.,* at 19. The search undertaken by the officer in that "stop and frisk" case was sustained under that test, because it was no more than a "protective . . . search for weapons." *Id.,* at 29. But in a companion case, *Sibron* v. *New York,* 392 U. S. 40, we applied the same standard to another set of facts and reached a contrary result, holding that a policeman's action in thrusting his hand into a suspect's pocket had been neither motivated by nor limited to the objective of protection.[7] Rather, the search had been made in order to find narcotics, which were in fact found.

A similar analysis underlies the "search incident to arrest" principle, and marks its proper extent. When an

---

[6] See also *Davis* v. *Mississippi,* 394 U. S. 721, 728; *Katz* v. *United States,* 389 U. S. 347, 356–358; *Warden* v. *Hayden,* 387 U. S. 294, 299; *Preston* v. *United States,* 376 U. S. 364, 367.

[7] Our *Sibron* opinion dealt with two cases. We refer here to No. 63, involving the appellant Sibron. See *infra,* at 764.

arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant.[8] The "adherence to judicial processes" mandated by the Fourth Amendment requires no less.

This is the principle that underlay our decision in *Preston* v. *United States,* 376 U. S. 364. In that case three men had been arrested in a parked car, which had later been towed to a garage and searched by police. We held the search to have been unlawful under the Fourth Amendment, despite the contention that it had

---

[8] See *Katz* v. *United States,* 389 U. S. 347, 357–358.

been incidental to a valid arrest. Our reasoning was straightforward:

> "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest." *Id.*, at 367.[9]

The same basic principle was reflected in our opinion last Term in *Sibron.* That opinion dealt with *Peters* v. *New York,* No. 74, as well as with Sibron's case, and *Peters* involved a search that we upheld as incident to a proper arrest. We sustained the search, however, only because its scope had been "reasonably limited" by the "need to seize weapons" and "to prevent the destruction of evidence," to which *Preston* had referred. We emphasized that the arresting officer "did not engage in an unrestrained and thoroughgoing examination of Peters and his personal effects. He seized him to cut short his flight, and he searched him primarily for weapons." 392 U. S., at 67.

It is argued in the present case that it is "reasonable" to search a man's house when he is arrested in it. But that argument is founded on little more than a subjective view regarding the acceptability of certain sorts of police

---

[9] Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll* v. *United States,* 267 U. S. 132, 153; see *Brinegar* v. *United States,* 338 U. S. 160.

conduct, and not on considerations relevant to Fourth Amendment interests. Under such an unconfined analysis, Fourth Amendment protection in this area would approach the evaporation point. It is not easy to explain why, for instance, it is less subjectively "reasonable" to search a man's house when he is arrested on his front lawn—or just down the street—than it is when he happens to be in the house at the time of arrest.[10] As Mr. Justice Frankfurter put it:

> "To say that the search must be reasonable is to require some criterion of reason. It is no guide at all either for a jury or for district judges or the police to say that an 'unreasonable search' is forbidden—that the search must be reasonable. What is the test of reason which makes a search reasonable? The test is the reason underlying and expressed by the Fourth Amendment: the history and the experience which it embodies and the safeguards afforded by it against the evils to which it was a response." *United States* v. *Rabinowitz,* 339 U. S., at 83 (dissenting opinion).

Thus, although "[t]he recurring questions of the reasonableness of searches" depend upon "the facts and circumstances—the total atmosphere of the case," *id.,* at 63, 66 (opinion of the Court), those facts and circumstances must be viewed in the light of established Fourth Amendment principles.

---

[10] Some courts have carried the *Rabinowitz* approach to just such lengths. See, *e. g., Clifton* v. *United States,* 224 F. 2d 329 (C. A. 4th Cir.), cert. denied, 350 U. S. 894 (purchaser of illicit whiskey arrested in back yard of seller; search of one room of house sustained); *United States* v. *Jackson,* 149 F. Supp. 937 (D. C. D. C.), rev'd on other grounds, 102 U. S. App. D. C. 109, 250 F. 2d 772 (suspect arrested half a block from his rented room; search of room upheld). But see *James* v. *Louisiana,* 382 U. S. 36 (*per curiam*).

It would be possible, of course, to draw a line between *Rabinowitz* and *Harris* on the one hand, and this case on the other. For *Rabinowitz* involved a single room, and *Harris* a four-room apartment, while in the case before us an entire house was searched. But such a distinction would be highly artificial. The rationale that allowed the searches and seizures in *Rabinowitz* and *Harris* would allow the searches and seizures in this case. No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items.[11] The only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other.[12]

---

[11] Cf. Mr. Justice Jackson's dissenting comment in *Harris:*

"The difficulty with this problem for me is that once the search is allowed to go beyond the person arrested and the objects upon him or in his immediate physical control, I see no practical limit short of that set in the opinion of the Court—and that means to me no limit at all." 331 U. S., at 197.

[12] It is argued in dissent that so long as there is probable cause to search the place where an arrest occurs, a search of that place should be permitted even though no search warrant has been obtained. This position seems to be based principally on two premises: first, that once an arrest has been made, the additional invasion of privacy stemming from the accompanying search is "relatively minor"; and second, that the victim of the search may "shortly thereafter" obtain a judicial determination of whether the search was justified by probable cause. With respect to the second premise, one may initially question whether all of the States in fact provide the speedy suppression procedures the dissent assumes. More fundamentally, however, we cannot accept the view that Fourth Amendment interests are vindicated so long as "the rights of the criminal" are "protect[ed] . . . against introduction of evidence seized without probable cause." The Amendment is designed to prevent, not simply to redress, unlawful police action. In any event, we cannot join in characterizing the invasion

The petitioner correctly points out that one result of decisions such as *Rabinowitz* and *Harris* is to give law enforcement officials the opportunity to engage in searches not justified by probable cause, by the simple expedient of arranging to arrest suspects at home rather than elsewhere. We do not suggest that the petitioner is necessarily correct in his assertion that such a strategy was utilized here,[13] but the fact remains that had he been arrested earlier in the day, at his place of employment rather than at home, no search of his house could have been made without a search warrant. In any event, even apart from the possibility of such police tactics, the general point so forcefully made by Judge Learned Hand in *United States* v. *Kirschenblatt,* 16 F. 2d 202, remains:

"After arresting a man in his house, to rummage at will among his papers in search of whatever will convict him, appears to us to be indistinguishable from what might be done under a general warrant; indeed, the warrant would give more protection, for presumably it must be issued by a magistrate. True, by hypothesis the power would not exist, if the supposed offender were not found on the prem-

of privacy that results from a top-to-bottom search of a man's house as "minor." And we can see no reason why, simply because some interference with an individual's privacy and freedom of movement has lawfully taken place, further intrusions should automatically be allowed despite the absence of a warrant that the Fourth Amendment would otherwise require.

[13] Although the warrant was issued at 10:39 a. m. and the arrest was not made until late in the afternoon, the State suggests that the delay is accounted for by normal police procedures and by the heavy workload of the officer in charge. In addition, that officer testified that he and his colleagues went to the petitioner's house "to keep from approaching him at his place of business to cause him any problem there."

ises; but it is small consolation to know that one's papers are safe only so long as one is not at home." *Id.*, at 203.

*Rabinowitz* and *Harris* have been the subject of critical commentary for many years,[14] and have been relied upon less and less in our own decisions.[15] It is time, for the reasons we have stated, to hold that on their own facts, and insofar as the principles they stand for are inconsistent with those that we have endorsed today, they are no longer to be followed.

Application of sound Fourth Amendment principles to the facts of this case produces a clear result. The search here went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area. The scope of the search was, therefore, "unreasonable" under the Fourth and Fourteenth Amendments, and the petitioner's conviction cannot stand.[16]

*Reversed.*

---

[14] See, *e. g.*, J. Landynski, Search and Seizure and the Supreme Court 87–117 (1966); Way, Increasing Scope of Search Incidental to Arrest, 1959 Wash. U. L. Q. 261; Note, Scope Limitations for Searches Incident to Arrest, 78 Yale L. J. 433 (1969); Note, The Supreme Court 1966 Term, 81 Harv. L. Rev. 69, 117–122 (1967).

[15] Cf. *Dyke* v. *Taylor Implement Mfg. Co.*, 391 U. S. 216, 220; *Katz* v. *United States*, 389 U. S., at 357–358, n. 20; *Warden* v. *Hayden*, 387 U. S., at 299; *Stoner* v. *California*, 376 U. S. 483, 487. But see *Cooper* v. *California*, 386 U. S. 58, 62; *Ker* v. *California*, 374 U. S., at 42 (opinion of Clark, J.); cf. *Beck* v. *Ohio*, 379 U. S. 89, 91; *Abel* v. *United States*, 362 U. S., at 236–239; *Giordenello* v. *United States*, 357 U. S. 480, 488.

[16] The State has made various subsidiary contentions, including arguments that it would have been unduly burdensome to obtain a warrant specifying the coins to be seized and that introduction of the fruits of the search was harmless error. We reject those contentions as being without merit.

Mr. Justice Harlan, concurring.

I join the Court's opinion with these remarks concerning a factor to which the Court has not alluded.

The only thing that has given me pause in voting to overrule *Harris* and *Rabinowitz* is that as a result of *Mapp* v. *Ohio,* 367 U. S. 643 (1961), and *Ker* v. *California,* 374 U. S. 23 (1963), every change in Fourth Amendment law must now be obeyed by state officials facing widely different problems of local law enforcement. We simply do not know the extent to which cities and towns across the Nation are prepared to administer the greatly expanded warrant system which will be required by today's decision; nor can we say with assurance that in each and every local situation, the warrant requirement plays an essential role in the protection of those fundamental liberties protected against state infringement by the Fourteenth Amendment.

Thus, one is now faced with the dilemma, envisioned in my separate opinion in *Ker,* 374 U. S., at 45–46, of choosing between vindicating sound Fourth Amendment principles at the possible expense of state concerns, long recognized to be consonant with the Fourteenth Amendment before *Mapp* and *Ker* came on the books, or diluting the Federal Bill of Rights in the interest of leaving the States at least some elbow room in their methods of criminal law enforcement. No comparable dilemma exists, of course, with respect to the impact of today's decision within the federal system itself.

This federal-state factor has not been an easy one for me to resolve, but in the last analysis I cannot in good conscience vote to perpetuate bad Fourth Amendment law.

I add only that this case, together with *Benton* v. *Maryland, post,* p. 784, *North Carolina* v. *Pearce, ante,* p. 711, and *Simpson* v. *Rice, ante,* p. 711, all decided

today, serve to point up, as few other cases have, the profound changes that the "incorporation doctrine" has wrought both in the workings of our federal system and upon the adjudicative processes of this Court.

MR. JUSTICE WHITE, with whom MR. JUSTICE BLACK joins, dissenting.

Few areas of the law have been as subject to shifting constitutional standards over the last 50 years as that of the search "incident to an arrest." There has been a remarkable instability in this whole area, which has seen at least four major shifts in emphasis. Today's opinion makes an untimely fifth. In my view, the Court should not now abandon the old rule.

## I.

The modern odyssey of doctrine in this field is detailed in the majority opinion. It began with *Weeks* v. *United States,* 232 U. S. 383 (1914), where the Court paused to note what the case before it was not. "It is not an assertion of the right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases. . . . Nor is it the case of burglar's tools or other proofs of guilt found upon his arrest *within the control of the accused.*" *Id.,* at 392. (Emphasis added.) This scope of search incident to arrest, extending to all items under the suspect's "control," was reaffirmed in a dictum in *Carroll* v. *United States,* 267 U. S. 132, 158 (1925). Accord, *Agnello* v. *United States,* 269 U. S. 20, 30 (1925) (holding that "the place where the arrest is made" may be searched "is not to be doubted"). The rule was reaffirmed in *Marron* v. *United States,* 275 U. S. 192, 199 (1927), where the Court asserted that authority

to search incident to an arrest "extended to all parts of the premises used for the unlawful purpose."

Within five years, this rule was qualified by two Prohibition Act cases, *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, 356–358 (1931), and *United States* v. *Lefkowitz,* 285 U. S. 452, 463–467 (1932).

If *Go-Bart* and *Lefkowitz* represented a retreat from the rule of *Weeks, Carroll, Agnello,* and *Marron,* the vigor of the earlier rule was reaffirmed in *Harris* v. *United States,* 331 U. S. 145 (1947), which has, but for one brief interlude, clearly been the law until today. The very next Term after *Harris,* in *Trupiano* v. *United States,* 334 U. S. 699 (1948), the Court held unjustifiable the seizure of a still incident to the arrest of a man at the still site, even though the still was contraband, had been visible through an open door before entering the premises to be "searched," and although a crime was being committed in the officers' presence. Accord, that year, *McDonald* v. *United States,* 335 U. S. 451 (1948) (gambling game seen through transom before entry). Less than two years later, however, the Court returned to the *Harris* rule in *United States* v. *Rabinowitz,* 339 U. S. 56 (1950), where the Court held that the reasonableness of a search does not depend upon the practicability of obtaining a search warrant, and that the fact of a valid arrest is relevant to reasonableness. *Trupiano* was *pro tanto* overruled.

Such rapid reversals have occurred before,[1] but they are rare. Here there had been two about-faces, one following hard upon the other. Justice Frankfurter objected in this language: "Especially ought the Court not reenforce needlessly the instabilities of our day by giving fair ground for the belief that Law is the expression of

---

[1] *Murdock* v. *Pennsylvania,* 319 U. S. 105 (1943), overruled *Jones* v. *Opelika,* 316 U. S. 584 (1942); *Legal Tender Cases,* 12 Wall. 457 (1871), overruled *Hepburn* v. *Griswold,* 8 Wall. 603 (1870).

chance—for instance, of unexpected changes in the Court's composition and the contingencies in the choice of successors." 339 U. S., at 86. Since that time, the rule of *Weeks, Marron, Harris,* and *Rabinowitz* has clearly been the law. *E. g., Abel* v. *United States,* 362 U. S. 217 (1960) (Frankfurter, J., writing for the Court); *Ker* v. *California,* 374 U. S. 23 (1963).[2]

## II.

The rule which has prevailed, but for very brief or doubtful periods of aberration, is that a search incident to an arrest may extend to those areas under the control of the defendant and where items subject to constitutional seizure may be found. The justification for this rule must, under the language of the Fourth Amendment, lie in the reasonableness of the rule. *Terry* v. *Ohio,* 392 U. S. 1, 9 (1968); *Sibron* v. *New York,* 392 U. S. 40 (1968); *Elkins* v. *United States,* 364 U. S. 206, 222 (1960). The Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In terms, then, the Court must decide whether a given search is reasonable. The Amendment does not proscribe "warrantless searches" but instead it proscribes "unrea-

---

[2] The majority cites *Kremen* v. *United States,* 353 U. S. 346 (1957), as suggesting an inconsistency. There, however, in a *per curiam* opinion the Court merely overturned a general search in which the entire contents of a cabin, which it took 11 pages of fine print for the Court to inventory, were seized. See *Abel* v. *United States,* 362 U. S. 217, 239 (1960) (*Kremen* distinguished as a "mass seizure").

sonable searches" and this Court has never held nor does the majority today assert that warrantless searches are necessarily unreasonable.

Applying this reasonableness test to the area of searches incident to arrests, one thing is clear at the outset. Search of an arrested man and of the items within his immediate reach must in almost every case be reasonable. There is always a danger that the suspect will try to escape, seizing concealed weapons with which to overpower and injure the arresting officers, and there is a danger that he may destroy evidence vital to the prosecution. Circumstances in which these justifications would not apply are sufficiently rare that inquiry is not made into searches of this scope, which have been considered reasonable throughout.

The justifications which make such a search reasonable obviously do not apply to the search of areas to which the accused does not have ready physical access. This is not enough, however, to prove such searches unconstitutional. The Court has always held, and does not today deny, that when there is probable cause to search and it is "impracticable" for one reason or another to get a search warrant, then a warrantless search may be reasonable. *E. g.*, even *Trupiano* v. *United States,* 334 U. S. 699 (1948). This is the case whether an arrest was made at the time of the search or not.[3]

This is not to say that a search can be reasonable without regard to the probable cause to believe that seizable items are on the premises. But when there are exigent circumstances, and probable cause, then the search may be made without a warrant, reasonably. An

---

[3] Even Mr. Justice Frankfurter, joined in dissent in *Rabinowitz* by Mr. Justice Jackson, admitted that there was an exception to the search-warrant requirement in cases of necessity, and noted that this applied, for example, to vehicles which could readily be moved. 339 U. S. 56, at 73.

arrest itself may often create an emergency situation making it impracticable to obtain a warrant before embarking on a related search. Again assuming that there is probable cause to search premises at the spot where a suspect is arrested, it seems to me unreasonable to require the police to leave the scene in order to obtain a search warrant when they are already legally there to make a valid arrest, and when there must almost always be a strong possibility that confederates of the arrested man will in the meanwhile remove the items for which the police have probable cause to search. This must so often be the case that it seems to me as unreasonable to require a warrant for a search of the premises as to require a warrant for search of the person and his very immediate surroundings.

This case provides a good illustration of my point that it is unreasonable to require police to leave the scene of an arrest in order to obtain a search warrant when they already have probable cause to search and there is a clear danger that the items for which they may reasonably search will be removed before they return with a warrant. Petitioner was arrested in his home after an arrest whose validity will be explored below, but which I will now assume was valid. There was doubtless probable cause not only to arrest petitioner, but also to search his house. He had obliquely admitted, both to a neighbor and to the owner of the burglarized store, that he had committed the burglary.[4] In light of this, and the fact that the neighbor had seen other

---

[4] Before the burglary of the coin store, petitioner had told its owner that he was planning a big robbery, had inquired about the alarm system in the store, the state of the owner's insurance, and the location of the owner's most valuable coins. Petitioner wandered about the store the day before the burglary. After the burglary, petitioner called the store's owner and accused him of robbing the store himself for the insurance proceeds on a policy which, as

admittedly stolen property in petitioner's house, there was surely probable cause on which a warrant could have issued to search the house for the stolen coins. Moreover, had the police simply arrested petitioner, taken him off to the station house, and later returned with a warrant,[5] it seems very likely that petitioner's wife, who in view of petitioner's generally garrulous nature must have known of the robbery, would have removed the coins. For the police to search the house while the evidence they had probable cause to search out and seize was still there cannot be considered unreasonable.[6]

---

petitioner knew, had just been reduced from $50,000 to $10,000 coverage. On being told that the robbery had been sloppy, petitioner excitedly claimed that it had been "real professional" but then denied the robbery. On the night of the robbery itself petitioner declined an invitation to a bicycle ride, saying he was "going to knock over a place" and that a coin shop was "all set." After the robbery, he told the same neighbor that he had started to break into the coin shop, but had stopped, and then denied the whole incident. The neighbor had earlier seen stacks of typewriters in petitioner's house. Asked whether they were "hot" petitioner replied, "Hotter than a $3 bill." On reading a newspaper description of the coin store burglary, the neighbor called the police.

[5] There were three officers at the scene of the arrest, one from the city where the coin burglary had occurred, and two from the city where the arrest was made. Assuming that one policeman from each city would be needed to bring the petitioner in and obtain a search warrant, one policeman could have been left to guard the house. However, if he not only could have remained in the house against petitioner's wife's will, but followed her about to assure that no evidence was being tampered with, the invasion of her privacy would be almost as great as that accompanying an actual search. Moreover, had the wife summoned an accomplice, one officer could not have watched them both.

[6] A second arrest and search of petitioner's house occurred three days later. It relates to an entirely separate robbery of which petitioner was separately convicted and for which he was concurrently sentenced. Since no evidence was seized in the second search, and since it did not in any way affect petitioner's trial so far as the record discloses, there is no occasion to consider its propriety.

## III.

This line of analysis, supported by the precedents of this Court, hinges on two assumptions. One is that the arrest of petitioner without a valid warrant [7] was constitutional as the majority assumes; the other is that the police were not required to obtain a search warrant in advance, even though they knew that the effect of the arrest might well be to alert petitioner's wife that the coins had better be removed soon. Thus it is necessary to examine the constitutionality of the arrest since if it was illegal, the exigent circumstances which it created may not, as the consequences of a lawless act, be used to justify the contemporaneous warrantless search. But for the arrest, the warrantless search may not be justified.[8] And if circumstances can justify the warrantless arrest, it would be strange to say that the Fourth Amendment bars the warrantless search, regardless of the circumstances, since the invasion and disruption of a man's life and privacy which stem from his arrest are ordinarily far greater than the relatively minor intrusions attending a search of his premises.

Congress has expressly authorized a wide range of officials to make arrests without any warrant in criminal cases. United States Marshals have long had this power,[9] which is also vested in the agents of the Federal

---

[7] An arrest warrant was in fact issued, but it was issued on an inadequate supporting affidavit and was therefore invalid, so that the case must be considered as though no warrant had been issued.

[8] This in turn assumes that where it is practicable to obtain a search warrant and the search is not contemporaneous with an arrest, a warrant must be obtained to validate the search. This is the holding of past cases and I do not question it.

[9] Act of June 15, 1935, c. 259, § 2, 49 Stat. 378, as amended, 18 U. S. C. § 3053.

Bureau of Investigation,[10] and in the Secret Service [11] and the narcotics law enforcement agency.[12] That warrantless arrest power may apply even when there is time to get a warrant without fear that the suspect may escape is made perfectly clear by the legislative history of the statute granting arrest power to the FBI.

In *United States* v. *Coplon,* 185 F. 2d 629, 633–636 (C. A. 2d Cir. 1950), the court held that an arrest and search were invalid because there was an insufficient showing of danger of escape, and therefore there was time to obtain a warrant. The opinion, written by Judge Learned Hand and joined by Judges Swan and Frank, reviewed the common-law power of arrest, which permitted arrests for felonies committed in the past "if [the officer] had reasonable ground to suppose that the person arrested had committed the felony." However, the court concluded that this power of warrantless arrest had been limited by the congressional requirement that there must be a "likelihood of the person escaping before a warrant can be obtained for his arrest."

The next month the Congress was moved by this very decision to amend the law, consciously deleting the language upon which Judge Hand had relied so as to make it clear that warrantless arrests were authorized even if there was time to procure a warrant. Act of January 10, 1951, c. 1221, § 1, 64 Stat. 1239; H. R. Rep. No. 3228, 81st Cong., 2d Sess. (1950).[13] Thereupon, the Court of

---

[10] Act of June 18, 1934, c. 595, 48 Stat. 1008, as amended, 18 U. S. C. § 3052.

[11] Act of Sept. 29, 1965, 79 Stat. 890, as amended, 18 U. S. C. § 3056 (1964 ed., Supp. IV).

[12] Act of July 18, 1956, as amended, Tit. I, § 104 (a), 70 Stat. 570, 26 U. S. C. § 7607 (2).

[13] Congress' expedition was possible partly because the same change had earlier been approved by a Senatorial committee. S. Rep. No. 2464, 81st Cong., 2d Sess. (1950).

Appeals for the District of Columbia Circuit, passing on the very same arrest which had induced the congressional action, held that this "unmistakable" revision made it clear that there was in the FBI a power to arrest without warrant even when there was time to procure one. For this reason, the court upheld the arrest and contemporaneous search. *Coplon* v. *United States,* 89 U. S. App. D. C. 103, 191 F. 2d 749 (1951). Certiorari was denied in both *Coplon* cases. 342 U. S. 920, 926 (1952). Moreover, the statute under which the FBI exercises that power was later said by this Court to state the constitutional standard, *Henry* v. *United States,* 361 U. S. 98, 100 (1959), since it requires "reasonable grounds to believe that the person to be arrested has committed or is committing" a felony, 18 U. S. C. § 3052, before a warrantless arrest may be made. And the Court today has declined to review a warrantless arrest under the narcotics agent statute. *Jamison* v. *United States, post,* p. 986. See also my dissent in *Shipley* v. *California, post,* p. 821.

The judgment of Congress is that federal law enforcement officers may reasonably make warrantless arrests upon probable cause, and no judicial experience suggests that this judgment is infirm. Indeed, past cases suggest precisely the contrary conclusion. The validity of federal arrests was long governed by state law, *United States* v. *Di Re,* 332 U. S. 581, 589–592 (1948), and no requirement that warrants be sought whenever there is time to do so was imposed either by common-law history [14] or by decisions of this Court. This Court has upheld an execu-

---

[14] There was no dispute between the two *Coplon* courts on this point, since it was well established that even a private person could make a warrantless arrest at common law for a felony which had actually been committed, and a peace officer could make such an arrest if he had reasonable cause to believe the offense had been committed. 1 J. Stephen, A History of the Criminal Law of England 193 (1883); 2 M. Hale, Pleas of the Crown 71–104 (first American ed. 1847).

tive arrest warrant for deportation, permitting the arrest to occur without prior judicial scrutiny, *Abel* v. *United States,* 362 U. S. 217 (1960). And this Court has regularly affirmed the validity of warrantless arrests without any indication whatever that there was no time to get a warrant, and indeed where all the circumstances pointed to the opposite conclusion. *E. g., Ker* v. *California,* 374 U. S. 23 (1963); *Draper* v. *United States,* 358 U. S. 307 (1959). The lower federal courts have certainly been of the view that warrants are unnecessary even where there is time to obtain them. *Dailey* v. *United States,* 261 F. 2d 870 (C. A. 5th Cir. 1958), cert. denied, 359 U. S. 969 (1959) (statutory warrantless arrest by federal narcotics agents); *Smith* v. *United States,* 103 U. S. App. D. C. 48, 52, 254 F. 2d 751, 755, cert. denied, 357 U. S. 937 (1958); *Mills* v. *United States,* 90 U. S. App. D. C. 365, 196 F. 2d 600, cert. denied, 344 U. S. 826 (1952) (*sub silentio*).

In light of the uniformity of judgment of the Congress, past judicial decisions, and common practice rejecting the proposition that arrest warrants are essential wherever it is practicable to get them, the conclusion is inevitable that such arrests and accompanying searches are reasonable, at least until experience teaches the contrary. It must very often be the case that by the time probable cause to arrest a man is accumulated, the man is aware of police interest in him or for other good reasons is on the verge of flight. Moreover, it will likely be very difficult to determine the probability of his flight. Given this situation, it may be best in all cases simply to allow the arrest if there is probable cause, especially since that issue can be determined very shortly after the arrest.

Nor are the stated assumptions at all fanciful. It was precisely these facts which moved the Congress to grant to the FBI the power to arrest without a warrant without any showing of probability of flight. Both the

Senate and House committees quoted the letter of the Acting Deputy Attorney General, Peter Campbell Brown, who in asking for the new legislation asserted: "Although it is recognized that in any felony case the person to be arrested may attempt to flee, it is also recognized that in any such case in which the defendant is arrested without a warrant in an emergency situation, such defendant may be able to present a rather convincing argument that he did not intend to flee." S. Rep. No. 2464, 81st Cong., 2d Sess., 2 (1950); H. R. Rep. No. 3228, 81st Cong., 2d Sess., 2 (1950). Some weight should be accorded this factual judgment by law enforcement officials, adopted by the Congress.

## IV.

If circumstances so often require the warrantless arrest that the law generally permits it, the typical situation will find the arresting officers lawfully on the premises without arrest or search warrant. Like the majority, I would permit the police to search the person of a suspect and the area under his immediate control either to assure the safety of the officers or to prevent the destruction of evidence. And like the majority, I see nothing in the arrest alone furnishing probable cause for a search of any broader scope. However, where as here the existence of probable cause is independently established and would justify a warrant for a broader search for evidence, I would follow past cases and permit such a search to be carried out without a warrant, since the fact of arrest supplies an exigent circumstance justifying police action before the evidence can be removed, and also alerts the suspect to the fact of the search so that he can immediately seek judicial determination of probable cause in an adversary proceeding, and appropriate redress.

This view, consistent with past cases, would not authorize the general search against which the Fourth

Amendment was meant to guard, nor would it broaden or render uncertain in any way whatsoever the scope of searches permitted under the Fourth Amendment. The issue in this case is not the breadth of the search, since there was clearly probable cause for the search which was carried out. No broader search than if the officers had a warrant would be permitted. The only issue is whether a search warrant was required as a precondition to that search. It is agreed that such a warrant would be required absent exigent circumstances.[15] I would hold that the fact of arrest supplies such an exigent circumstance, since the police had lawfully gained entry to the premises to effect the arrest and since delaying the search to secure a warrant would have involved the risk of not recovering the fruits of the crime.

The majority today proscribes searches for which there is probable cause and which may prove fruitless unless carried out immediately. This rule will have no added effect whatsoever in protecting the rights of the criminal accused at trial against introduction of evidence seized without probable cause. Such evidence could not be introduced under the old rule. Nor does the majority

---

[15] A search without a warrant "can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant. *Jones* v. *United States,* 357 U. S. 493, 499; *United States* v. *Jeffers,* 342 U. S. 48, 51." *Rios* v. *United States,* 364 U. S. 253, 261 (1960); *Stoner* v. *California,* 376 U. S. 483, 486 (1964). And "a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. *Agnello* v. *United States,* 269 U. S. 20." *Stoner* v. *California, supra,* at 486; *James* v. *Louisiana,* 382 U. S. 36, 37 (1965). There is thus no question that a warrant to search petitioner's house would have been required had he not been arrested there. In such cases, the officers are not already lawfully on the premises, and there is not so often the same risk of the destruction of evidence nor the necessity to make an immediate search without the delay involved in securing a warrant.

today give any added protection to the right of privacy of those whose houses there is probable cause to search. A warrant would still be sworn out for those houses, and the privacy of their owners invaded. The only possible justification for the majority's rule is that in some instances arresting officers may search when they have no probable cause to do so and that such unlawful searches might be prevented if the officers first sought a warrant from a magistrate. Against the possible protection of privacy in that class of cases, in which the privacy of the house has already been invaded by entry to make the arrest—an entry for which the majority does not assert that any warrant is necessary—must be weighed the risk of destruction of evidence for which there is probable cause to search, as a result of delays in obtaining a search warrant. Without more basis for radical change than the Court's opinion reveals, I would not upset the balance of these interests which has been struck by the former decisions of this Court.

In considering searches incident to arrest, it must be remembered that there will be immediate opportunity to challenge the probable cause for the search in an adversary proceeding. The suspect has been apprised of the search by his very presence at the scene, and having been arrested, he will soon be brought into contact with people who can explain his rights. As MR. JUSTICE BRENNAN noted in a dissenting opinion, joined by THE CHIEF JUSTICE and JUSTICES BLACK and DOUGLAS, in *Abel* v. *United States,* 362 U. S. 217, 249–250 (1960), a search contemporaneous with a warrantless arrest is specially safeguarded since "[s]uch an arrest may constitutionally be made only upon probable cause, the existence of which is subject to judicial examination, see *Henry* v. *United States,* 361 U. S. 98, 100; and such an arrest demands the prompt bringing of the person arrested before a judicial officer, where the existence of

probable cause is to be inquired into.   Fed. Rules Crim. Proc. 5 (a) and (c). . . .   *Mallory* v. *United States,* 354 U. S. 449; *McNabb* v. *United States,* 318 U. S. 332." And since that time the Court has imposed on state and federal officers alike the duty to warn suspects taken into custody, before questioning them, of their right to a lawyer.  *Miranda* v. *Arizona,* 384 U. S. 436 (1966); *Orozco* v. *Texas,* 394 U. S. 324 (1969).

An arrested man, by definition conscious of the police interest in him, and provided almost immediately with a lawyer and a judge, is in an excellent position to dispute the reasonableness of his arrest and contemporaneous search in a full adversary proceeding.   I would uphold the constitutionality of this search contemporaneous with an arrest since there were probable cause both for the search and for the arrest, exigent circumstances involving the removal or destruction of evidence, and satisfactory opportunity to dispute the issues of probable cause shortly thereafter.   In this case, the search was reasonable.