SANDERS, Justice
(dissenting).
The decision on rehearing is based upon a single ground: The arrest was used by the arresting officer as a pretext for a search of the premises. In so holding, the majority has eliminated the following additional grounds included in the original decision: (1) the search of the kitchen was too broad in scope, and (2) no incidental search of premises is authorized unless the arrestee owns or leases the premises. I, of course, heartily approve the rejection of these grounds. As demonstrated in my former dissent, they have no foundation in law.
The majority makes no finding that the officers had passed up prior opportunities to arrest the fugitive. No such finding could be made from the evidence. The evidence reflects that Mixon was aware he was wanted by the law enforcement authorities and was moving around to avoid arrest. Nonetheless, the majority concludes the officers used the arrest as a pretext for the search, because they could have deferred the arrest until after the fugitive left the house.
The holding, in my opinion, is unsound. Because of the outstanding warrant, the officers had the duty of making the arrest. C.Cr.P.Art. 213. That they did so at their first opportunity should not be questioned by the court. The holding puts the courts in the business of second-guessing policemen as to the proper time to make an arrest. Thus, it represents another obstacle thrown in the path of law enforcement officers in their efforts to suppress crime.
If a reason other than the warrant is required to explain why the oficers made the arrest in the house, it is found in the *445 evidence. They were afraid that Mixon, a known narcotic addict, would dispose of all narcotics in his possession.[1] For example, when Officer Lampard was asked why the police did not wait until Mixon returned to the car to make the arrest, he replied:
“Because we didn’t want to take any chances of him getting rid of narcotics. Anybody looking out that door would have saw us. They would have flushed those narcotics and got rid of it as they had done.”
It is common knowledge that addicts attempt to dispose of the narcotics in their possession when threatened with arrest. State v. Johnson, 250 La. 85, 193 So.2d 794 (1967).
If “something more * * * than merely a lawful arrest” is required for an incidental search without a search warrant, it is also found in the evidence of record.[2] The arresting officers observed fresh “track marks” on the arms of both the fugitive and the present defendant, indicating to them recent use of narcotics. They also observed the fugitive move quickly away from the sink and cabinet drawers.
The seizure of the narcotics in the present case falls well within the guidelines of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), wherein the United States Supreme Court stated:
“When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer’s safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seizure any evidence on the arrestee’s person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who *447 is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee’s person and the area “within his immediate control” — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.”
For the reasons assigned, I respectfully dissent.

. Narcotics found on Mixon’s person or under his constructive possession or control could have been used to prove the crime for which he was being arrested, forgery of a narcotic prescription. Even if they were not acquired with the forged prescription, they were admissible to show guilty knowledge and intent. They could have also been used to prove an independent crime. See Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

. Unfortunately, the majority resurrects the quoted language from Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), expressly and partially overruled in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The majority apparently assumes that the historical review of this decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) reinstates all of its pronouncements. In my opinion, this assumption is unwarranted.