■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS CARATELLI and LYNNE WEITHORN, Appellants. — Appeals by defendants from two judgments (one as to each of them) of the Supreme Court, Queens County (Dunkin, J., at sentencing; Beldock, J., at the suppression hearing), both rendered September 24, 1980, the first convicting defendant Caratelli of defacement of a weapon, upon his plea of guilty, and the second convicting defendant Weithorn of criminal possession of marihuana in the fourth degree, upon her plea of guilty, and imposing sentences. Judgments reversed, on the law and the facts, pleas vacated, the gun, ammunition and marihuana are suppressed, and the case is remitted to Criminal Term for further proceedings on the indictment. At approximately 6:30 P.M. on October 5, 1978, Mitchell Weithorn, the divorced husband of defendant Lynne Weithorn, made a complaint to police detectives in Queens. He said that at approximately 4:00 P.M. on that date he had driven his son back to Ms. Weithorn's apartment, where she resided with the child and the defendant Caratelli, following a visit with the child. Ms. Weithorn allegedly leaned from the window to ask Mr. Weithorn to stay to talk with her. Shortly thereafter, the defendant Caratelli appeared at the car with a gun. Both Caratelli and Ms. Weithorn entered the car, Caratelli entering at the driver's side. Mr. Weithorn was allegedly driven to a parking lot. Caratelli struck him with the gun and demanded the registration for the car so that Weithorn could sign it over to his former wife. Mr. Weithorn told Caratelli and his ex-wife that the transfer portion of the registration was at his mother's house. Caratelli then drove to the house, sent Mr. Weithorn in to get the registration and advised him that if he did not come back promptly, he (Caratelli) would go in shooting. Mr. Weithorn entered the house and returned with the registration. The car was registered in the mother's name. The three then went to another parking lot where Caratelli allegedly forged the mother's signature and he and Ms. Weithorn prepared a bill of sale to cover the transfer of the car from the mother to Ms. Weithorn. Mr. Weithorn was then ejected from the car, threatened and told not to make any report to the police. Acting on the information received from Mr. Weithorn, two detectives went to Ms. Weithorn's apartment at approximately 8:00 P.M. the same night. They knocked on the door and identified themselves as police officers. They heard noise in the apartment. After some delay Ms. Weithorn opened the door. The detectives immediately arrested her but did not put her in handcuffs. One detective, Detective Moscardini, proceeded through the apartment in search of Caratelli. Only the child was present in the apartment with Ms. Weithorn. In the course of his trip through the apartment, Moscardini walked through the dining room. No person was in that room, but the car registration and the bill of sale were in plain view on the dining table. Moscardini took them. The detectives then telephoned for assistance. Uniform police officers, including Officer Olivia Morrison, responded quickly. Moscardini advised Morrison that Ms. Weithorn was under arrest and to be careful because they were looking for a gun. One officer was watching Ms. Weithorn at the time. Several police officers went to the building's roof and Moscardini went out onto the fire escape to continue the search for Caratelli. Morrison made a pat search of Ms.

Weithorn. She found no weapon. However, Morrison did notice a closet in the entry way of the apartment, about four or five feet away from Ms. Weithorn, who was still not handcuffed but who was being guarded by a police officer. Morrison saw that no person was hiding in the closet. She also saw that a stack of sweaters folded on the closet shelf seemed to be somewhat elevated above the shelf. She went to the closet and reached under the sweaters. As Morrison approached the closet, Ms. Weithorn sought to intervene and was restrained by the male police officer who had been watching her. Morrison found a package which, because she could feel the outline, she was able to determine contained a gun. She reached further under the sweaters and retrieved ammunition and a plastic bag containing what was later identified as marihuana. Moscardini returned to the apartment with Caratelli, who had been found on the fire escape between the apartment and the roof. He was arrested. Morrison gave the gun, ammunition and marihuana to Moscardino. A Grand Jury later indicted the defendants for a variety of felony charges, including robbery in the first degree; criminal possession of a weapon in the second degree; manufacture, transportation, disposition and defacement of a weapon; forgery in the second degree; and criminal possession of marihuana in the third degree. At the suppression hearing, the court determined that the registration and bill of sale should be suppressed. However, concluding that the gun, ammunition and marihuana were within an area accessible to Ms. Weithorn, the court refused to suppress that evidence. The complaining witness, Mr. Weithorn, decided he would not prosecute on the charges involving him. The defendants then entered pleas to the crimes indicated above. Shortly after their suppression motion was decided, the United States Supreme Court decided *Payton v New York* (445 US 573), in which that court held that warrantless arrests in a person's home are, absent exigent circumstances, unreasonable. Defendants moved to reargue, claiming that the *Payton* decision should be applied to their case. The court granted reargument but adhered to its original decision, refusing to give retroactive effect to *Payton*. We agree with the hearing court that the *Payton* decision should not be retroactively applied (see *People v Gordon,* 80 AD2d 647; *People v Gonzalez [Federico],* 80 AD2d 647; *People v Whitaker,* 79 AD2d 668; see, also, *People v Benitez,* 76 AD2d 196). However, the gun, ammunition and marihuana should be suppressed. They were found in the closet several feet away from defendant Weithorn, who was being guarded by a police officer but who had not been handcuffed. On this record, the simple expedient of restraining her with handcuffs would have obviated any threat or danger to the police officers from any weapon that might have been near Ms. Weithorn. Moreover, from the testimony given, it appears that the closet in question was not within the so-called "grabbable distance" of Ms. Weithorn or within an area of her immediate control (see *Chimel v California,* 395 US 752). As such the closet was not subject to a warrantless search following Ms. Weithorn's arrest. Hopkins, J. P., Rabin, Thompson and Bracken, JJ., concur.