STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark A. SANDERS, Defendant-Appellant.†

Court of Appeals

*No. 2011AP2384–CR. Submitted on Briefs July 30, 2012.
—Decided December 18, 2012.*

2013 WI App 4

(Also reported in 826 N.W.2d 394.)

† Petition for Review Filed.

754

On behalf of the defendant-appellant, the cause was submitted on the brief of *Bridget E. Boyle* of *Boyle, Boyle & Boyle, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen,* attorney general, and *Sara Lynn Larson,* assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J.   Mark A. Sanders appeals a judgment convicting him of one count of possession of a firearm by a felon and one count of possession of a firearm by a person subject to a domestic abuse injunction. He also appeals an order denying his motion for postconviction relief. Sanders argues:   (1) that the circuit court erred in denying his motion to suppress evidence; and (2) that there was insufficient evidence to support the jury's verdict. We affirm.

¶ 2.   Sanders first argues that the circuit court should have suppressed a gun that the police found in a room adjacent to the hallway where he was arrested because the police did not obtain a warrant before they conducted the search. Sanders argues that while the police may search a person lawfully arrested and "the area within his immediate control" without a warrant, the gun was not within his immediate control after he was arrested and handcuffed. *See Chimel v. California*, 395 U.S. 752, 763 (1969) (internal quotation marks omitted).

¶ 3.   Sanders reads *Chimel* too narrowly. *Chimel* teaches that "it is reasonable for [an] arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to

756

resist arrest or effect his escape" and that it is also "entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id. Chimel* explains that the police may also search the area within the arrestee's "immediate control" incident to arrest in order to prevent the destruction of evidence of the crime and protect officers' safety. *Id.* (internal quotation marks omitted).

¶ 4.   In this case, Sanders was apprehended after fleeing the police in the hallway of an apartment under circumstances that suggested that he just hid evidence of the crime the police were pursuing him for—possession of a firearm—under bedcoverings in a bedroom from which he emerged as the police entered. Acting on an informant's tip that Sanders was armed, the police had approached Sanders, who was standing outside a residence with another man. When the police identified themselves and ordered the men to put their hands in the air, Sanders ran into the residence. As he did so, the police saw him adjust something at his waistband which, based on the officers' training and experience, suggested that Sanders was carrying a weapon. After pursuing Sanders into the house, the police encountered him near the door of a bedroom and noticed that the bedcoverings were rumpled in a manner that suggested to the officers, again based on their experience, that an object may have been recently hidden there.

██

¶ 5.   Under these circumstances, the rumpled bedcovers on the nearby bed suggested that the gun reported in the tip was likely hidden there. The police did not conduct a general search of the house or the room where they located Sanders; instead, they

searched only the bed because they reasonably inferred from the rumpled bedding that Sanders had just stashed a weapon. Given the circumscribed nature of the scope of the police search and the timeframe—just seconds after entering the house and seeing Sanders and the disturbed bedding—this search was reasonable as incident to Sanders' arrest.

■

¶ 6.  Sanders next argues that there was insufficient evidence to support the jury's verdict. "[A]n appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). We apply the same standard of review regardless of whether the evidence is direct or circumstantial. *Id.*

¶ 7.  Police Officer Jon Osowski testified that he responded to an informant's tip with his partner Michael Wawrzyniakowski and Officer Joe Warner. They received information from a confidential informant that there was an armed man dressed in a gray sweater with a white T-shirt underneath in the area south of 61st Street and Capitol Drive. They arrived at the location within a few minutes of receiving the tip and saw Sanders, who fit the description, standing near the front steps of a residence talking to another person. The police identified themselves and ordered the men to put their hands up, but Sanders fled inside the residence. Officer Osowski testified that he saw Sanders bend at the waist and move his hands near his waistband in a manner consistent with someone carrying a concealed weapon as he turned to run. Officer

Osowski also testified that after following Sanders into the house, he saw Sanders emerge from the back left side of the hallway where a bedroom was located. After placing Sanders under arrest, Officer Osowski asked Officer Wawrzyniakowski to look in the back left bedroom where the bed appeared disturbed. Officer Osowski's partner went to the bed and immediately found the gun.

¶ 8.   Officer Wawrzyniakowski testified that he responded to the informant's tip with Officers Osowski and Warner. He testified that Sanders and another man were in front of a residence when he approached with the other two officers. He testified that he ordered the men to put their hands up and that he handcuffed the other man, who immediately surrendered. After proceeding into the house, he saw the disturbed bedcoverings in the back left bedroom, which suggested to him that something had been hidden there based on his previous experiences. He looked and found the gun. He did not search any other area in the house.

██

¶ 9.   Finally, the State presented evidence that Sanders had previously been convicted of a felony and was subject to a domestic abuse restraining order. The officers' testimony and the documentation of Sanders' status as a felon who was also subject to a restraining order provided more than sufficient evidence for a reasonable trier of fact to conclude that Sanders was guilty of possession of a firearm by a felon and possession of a firearm by a person subject to a domestic abuse restraining order. Therefore, we reject the argument that there was insufficient evidence to sustain the conviction.

*By the Court.*—Judgment and order affirmed.

¶ 10. KESSLER, J. (*dissenting*). *Chimel* explicitly does not permit a warrantless search of an area which is not within the "immediate control" of an arrested person. The Supreme Court explained both the rationale for, and the narrowly drawn limitations of, an area of "immediate control."

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape . . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. *And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.* A gun on a table or in a drawer in front of one who is arrested can be as dangerous to an arresting officer as one concealed in the clothing of the person arrested. *There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.*
>
> There is *no comparable justification, however, for routinely searching any room other than that in which an arrest occurs*-or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. *Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant.*

*Chimel*, 395 U.S. at 762–63 (emphasis supplied).

¶ 11. Sanders was arrested in the hall. He was taken by officers to the kitchen, seated at a table, and handcuffed. One or more officers remained with him.

760

The gun was discovered under a mattress in a bedroom six to eight feet from the kitchen.

¶ 12.   A bed, in a bedroom six to eight feet from the kitchen, is not "within the immediate control" of a handcuffed and guarded arrestee in the kitchen. In these circumstances, the bedroom is clearly not an "area into which [Sanders] might reach in order to grab a weapon." *See id.* at 763. The warrantless search of the bedroom is, in my view, exactly the type of search *Chimel* explains is prohibited by the Fourth Amendment. I conclude that Sanders' motion to suppress the gun should have been granted and his conviction should be reversed.