**Marvin F. SAUNDERS, Petitioner,**

**v.**

**A. E. SLAYTON, Superintendent Virginia State Penitentiary, Respondent.**

**Civ. A. No. 71–C–32–C.**

United States District Court, W. D. Virginia, Charlottesville Division.

Sept. 8, 1972.

Marvin F. Saunders, pro se.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION

WIDENER, Chief Judge.

Petitioner, who is currently being detained at the Virginia State Farm, was convicted of breaking and entering and shooting at an occupied vehicle. He pleaded not guilty to both charges and was tried by jury in the Circuit Court of Fluvanna County on September 25, 1969. The jury found him guilty of both charges and he was sentenced to three years on the breaking and entering charge and ten years on the charge of shooting at an occupied vehicle.

He appealed his conviction to the Supreme Court of Virginia, which court denied his petition for writ of error on October 13, 1970.

He now petitions this court for relief from his sentence by way of habeas corpus. As grounds for relief, his petition states the following:

(1) Petitioner was arrested and interrogated without the aid of counsel, petitioner was not advised that he had the right to counsel at the time of arrest, nor after being arrested. Petitioner was not aware that he had a right to counsel nor was he aware that he had constitutional rights.

(2) Petitioner was only given from five to ten minutes to talk with counsel before trial.

(3) Court refused to continue the trial to give counsel the opportunity to prepare the case.

(4) Evidence was used by the court that the Commonwealth witnesses could not identify.

(5) Petitioner was illegally interrogated.

(6) Co-defendant testified in order for the court to obtain any conviction against the petitioner. Co-defendant's testimony was not the same testimony each time.

It appears from the petition for writ of error to the Virginia Supreme Court that grounds numbered 2 and 3 were not presented to that court and will, therefore, be dismissed without prejudice. Petitioner has not exhausted his state remedies on those two grounds. 28 U.S.C. § 2254. A consideration of such grounds, nevertheless, shows them to be without merit. Counsel stated at least twice that he was ready for trial. The record shows that he had prepared his instructions and was ready to try the case. He stated that he was making the objection because the petitioner had so requested, and that he himself was ready for trial. The petitioner's reasoning appears from the transcript to be that he thought he was going to have longer to talk to counsel immediately before trial. It does not appear that he had anything else to tell his lawyer or to add to his case to improve his defense. In his motion for a continuance, counsel made no mention of any prejudice which might result if the motion were denied, nor did he state any reasons for the necessity for such continuance. No prejudice is alleged or shown in the record. It also appears from the record that defense counsel had previously conferred with petitioner. The following colloquy is pertinent and, in the opinion of the court, should dispose of the matter.

COURT: Haven't you talked with him about the case a number of times . . . . .

KILGORE: I talked to him in Nelson County, yes sir, in the Nelson County Jail.

COURT: All right. Do you feel that you haven't had an opportunity to confer further with him?

KILGORE: Judge, I'm ready for trial today, yes sir.

Petitioner did raise the question of the legality of his interrogation and the sufficiency of the evidence before the Virginina Supreme Court. He has exhausted state remedies as to grounds numbered 1, 4, 5, and 6. Grounds 1 and 5 both refer to the legality of the interrogation of petitioner and will be considered together.

The transcript shows that during the early morning hours of January 17, 1969, W. D. Oliver, a county merchant, was aroused by a telephone call which informed him that he had better get over to his store. The call came from Mrs. Emery Skeen, the wife of deputy sheriff Emery Skeen. Located in the Skeens' home, which is situated near Oliver's store, is an intercom which connects with the store. Deputy Skeen heard a sound like breaking glass over the intercom and drove to the store. As deputy Skeen approached the store, a car pulled out from the store and the occupants of the car proceeded to shoot at Skeen's automobile. During the chase, according to the deputy, about forty shots were fired at him. Although Skeen was uninjured, bullets struck the radiator, windshield, doors and fenders, shot out three of the headlamps and one of the tires. Skeen, unable to drive due to the flat tire, got a ride to a deputy sheriff's house. Skeen identified the automobile as a turquoise 1953 Ford.

The Commonwealth offered the testimony of Herbert Lee Strickland who participated in the crime. His testimony reveals that the defendant Saunders, Richard Bell and himself left a pool hall in Washington, D. C., on the night in question and proceeded to Oliver's store. He stated that they broke the glass of the front door (Saunders broke the glass) but could not get in because the door locked from the inside as well as the outside and a key was needed to gain admittance. They then went to the rear of the store and, while using a glass cutter on a rear window, Officer Skeen approached in his police car. The three men next ran to their car and fled the scene, pursued by officer Skeen. Strickland stated that he and Saunders both shot at Skeen's vehicle. The car, which belonged to and was driven by Bell, was abandoned in a private driveway in Scottsville. Strickland said that the car was a turquoise 1953 Ford with Virginia tags. Such description coincides with that given by deputy Skeen.

F.B.I. agent James F. Brennan testified, and stated that he arrested petitioner Saunders on January 27, 1969, in room A at 1824 Biltmore Street in Washington. On direct examination, he identified a Ford car key as the key he took from Saunder's night stand on the night of the arrest. It appears from the testimony that Saunders was in bed and that the night stand was beside the bed. The Commonwealth offered the key as exhibit 2 at which time defense counsel objected to its relevance and materiality. The Commonwealth's Attorney said "I'll tie it up for you," and defense counsel said "okay." *No other objection was made at that time*. Brennan testified that Saunders told him that it was the key to Bell's car. On cross examination, defense counsel asked Brennan what kind of warning he gave Saunders. Brennan replied:

Yes, sir, upon entering the room we advised Mr. Saunders he was under arrest; we advised him of our identities; we moved him from the bed in which he was laying and at which time we advised him that he had a right to remain silent; he had a right to an attorney; he had a right to have an attorney present during questioning and that anything that he said could be used against him in a court of law.

Q. Did you tell him that he had the right to an attorney to be appointed?

A. At that time, no sir . . . .

It was only at this point that defense counsel objected on the grounds that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), had not been complied with and moved for a mistrial. The Commonwealth's Attorney agreed that the statement that the key was to Bell's car should be stricken and the court stated, "I will instruct the jury that they must not consider what Mr. Saunders said with respect to the keys." The court noted that the objection was not timely and overruled the motion for a mistrial.

The ignition key was turned over to the Albemarle authorities, two of whom testified that the key fit the ignition of the Bell automobile—the 1953 turquoise Ford.

■■ The court will consider first the petitioner's allegations that the mandate of *Miranda* was not complied with. When petitioner was arrested, the arresting authorities had not only the right but the duty to seize any weapons or evidence which could easily be hidden or destroyed which lay within the reach of the petitioner. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Since the keys were on the night stand beside the bed and petitioner was in the bed, the keys were properly seized. *Miranda* has nothing to do with that. *Miranda*, however, does mandate that the statement made by Saunders, that the key fit Bell's car, not be admitted, because petitioner was not advised that he had the right to have counsel appointed for him. *Miranda* does not say that the Commonwealth may not prove that fact by other means. Here, the Commonwealth produced three witnesses who established the chain of custody of the key, and two of the witnesses testified to the fact that the key fit Bell's car. The fact that the key was conclusively identified by independent admissible evidence, plus the fact that defense counsel objected only after the

evidence had been admitted, leads the court to conclude that petitioner's contention is without merit. This conclusion is further supported by the fact that the statement was stricken from the record and the jury instructed to disregard it. The trial court did all within its power to correct the error, and, in view of the corrective measures taken and the independent evidence, the court is of opinion that, if erroneous, it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Petitioner has challenged the sufficiency of the evidence against him in three particulars. (1) "Evidence was used by the court that the Commonwealth witness could not identify." (2) "Co-defendant testified in order for the court to obtain any conviction. (3) Co-defendant's testimony was not the same testimony each time."

■ The rule is well established that, when the sufficiency of the evidence supporting a state conviction is challenged by way of federal habeas corpus, the sole constitutional question is whether the conviction rests upon any evidence at all. Williams v. Peyton, 414 F.2d 776 (4th Cir. 1969); Holloway v. Cox, 437 F.2d 412 (4th Cir. 1971). A review of the transcript in this case leaves the court with no doubt that there is more than ample evidence to support the conviction using the test prescribed in *Williams* and *Holloway*.

■ Petitioner's claim that the co-defendant testified differently on different occasions is frivolous. On April 9, 1969, Strickland, who testified against petitioner Saunders at the trial, stated at a hearing that Saunders and Bell picked him up in Washington (to go to commit the crime) at a place called the Chili Bowl. At Saunders' trial, Strickland stated that Saunders and Bell picked him up at a pool room. It was also adduced at the trial that the Chili Bowl is located in front of the pool room. Therefore, Strickland's testimony is actually not different at all. He was, in-

deed, in the pool room and it matters not whether he was in the back of the room shooting pool or in the front of the room eating chili. This technical inconsistency casts no infirmity upon the overall sufficiency of the evidence.

■ Petitioner also complains that Strickland, an accomplice, was allowed to testify against him. There is no constitutional infirmity in allowing an accomplice to testify against one who participated in the crime. The trial court granted the standard instruction that the jury should receive such evidence with great care, and, while Strickland was the key witness, there is ample corroborating evidence to remove any doubts as to the sufficiency of the evidence on review at this stage.

■ Finally, petitioner alleges that the court erred in admitting bullets which were removed from Skeen's automobile when those bullets could not be positively identified as to caliber and what particular gun they were fired from. Skeen did state that he removed the bullets the morning after the incident. According to the testimony of the accomplice, Strickland, several guns were used when they were firing at Skeen and petitioner was firing one of those guns. The testimony of Strickland alone would be enough to show that petitioner fired at Skeen's automobile; it is hardly necessary to introduce the very bullets which petitioner fired. The bullets introduced may have been of less probative value due to the absence of scientific individual identification, but they did tend to support Skeen's statement that he was shot at. There is no merit to petitioner's claim as to the bullets.

■ In all events, the admissibility and sufficiency of evidence in state trials are matters of state law not involving federal constitutional issues unless they give rise to fundamental unfairness or infringe specific constitutional protections, neither of which is present in grounds 4 and 6. Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960).

The state record is adequate to resolve all the issues presented and no further hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

An order is this date entered consistent with this opinion.