**UNITED STATES of America**
v.
**Joe Don LOONEY.**
**Crim. No. 2223.**

United States District Court,
E. D. Texas,
Marshall Division.

Jan. 4, 1973.
As Corrected Jan. 22, 1973.

Roby Hadden, U. S. Atty., Dennis Lewis, Asst. U. S. Atty., Tyler, Tex., for the United States.

Michael Thornell, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### STATEMENT OF THE CASE

STEGER, District Judge.

Defendant, Joe Don Looney, was indicted for possession of a firearm as defined by 26 U.S.C. § 5845(a), to wit, an M3, .45 caliber sub-machine gun, serial number US425327, with a barrel length of eight inches and an overall length of 29.8 inches, which firearm was not registered to him in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code, in violation of 26 U.S.C. §§ 5861(d) and 5871. Defendant filed a motion to suppress the sub-machine gun as evidence because it was seized as a result of an illegal search. This decision focuses on Defendant's motion and on no other aspect of the case.

### FINDINGS OF FACT

1. On April 5, 1972, at approximately 2:00 A.M., federal agents of the Bureau of Narcotics and Dangerous Drugs went to the home of Mr. Don Looney, father of defendant. The purpose of the early morning visit was to execute and serve an arrest warrant on one Ronald D. Frick, who was believed to be in the Looney residence. The warrant for the arrest of Frick had been obtained from a United States Magistrate in the Northern District of Texas.

2. The agents had no arrest warrant for Defendant, nor did the agents have a search warrant for the Looney residence. The agents had reason to believe Frick was in the Looney residence based upon information Frick had given one of the federal agents while the agent was working as an undercover agent.

3. The arrest warrant for Frick had been obtained for an "obstruction of justice" charge related to a planned assassination of a federal judge. Frick had offered to sell certain drugs to the federal undercover agent on an earlier date, if the undercover agent would agree to assassinate a certain federal judge.

4. Due to the nature of the arrest warrant the federal agents, at the time of arrest, had reason to believe that Frick was a dangerous person, therefore the agents surrounded the Looney residence and were armed.

5. While several agents surrounded the house three agents proceeded to the front door and, after knocking, were met by defendant Looney. Two of the agents announced that their purpose was to arrest Frick. The agents then entered the front door and found Frick lying on the living room floor. Frick was immediately placed under arrest, handcuffed and placed in a chair in the living room of the residence. Defendant Looney was also secured in the living room and placed under guard along with Frick.

6. The premises was immediately secured by the agents, that is, there were

no weapons within the reach of Frick or Looney.

7. After the agents had secured both Looney and Frick, they began a warrantless search of the Looney residence. At an undetermined point during this search the .45 caliber sub-machine gun in question was discovered under a bed in a bedroom of the house. The bedroom was out of the immediate control of both Frick and Looney. While the search lasted approximately three hours, the weapon was discovered sometime after both Frick and Looney were restrained.

8. At a time between 6:00 and 7:00 A.M. on April 5, 1972, Frick and Looney were taken before the United States Magistrate in Marshall, Texas.

## CONCLUSIONS OF LAW

■ 1. From the foregoing Findings of Fact, the Court concludes that the warrantless search of Defendant Looney's residence was violative of Looney's Constitutional protection against unlawful searches and seizures, and that the evidence seized as a result of such search was seized unlawfully and should be suppressed.

■ 2. In the course of a lawful arrest, an agent may search not only the suspect's person but also that limited portion of the premises which is within the suspect's immediate control, and from which he might be able to reach a weapon or destructible evidence. A warrantless search in this situation is justified in order to find any weapons the suspect might seize to resist the arrest or effect an escape, or in order to prevent the suspect from concealing or destroying any evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

3. The weapon in question was found after both Frick and Defendant Looney were secured and a cursory search had been made in the area subject to Frick's and Looney's immediate control.

4. The warrantless search continued at length after the suspects and the premises were secured.

5. The federal agents could have applied for a search warrant after the arrest, based on probable cause if any existed. Under the facts presented, one agent could have obtained a search warrant while the remaining agents continued to secure the premises and guard against the destruction of evidence. Trupiano v. United States, 334 U.S. 699, 706, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); United States v. Kaplan, 89 F. 2d 869 (2d Cir. 1937); Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932).

6. Both Defendant Looney and Frick were handcuffed and guarded in the living room of the home while an extended warrantless exploratory search was conducted. Such a search does not fit within the exception provided by Chimel v. United States, *supra*, whereby such search may be made of the area within the suspect's immediate control in order to either protect the arresting officer, prevent escape, or prevent the destruction of evidence.

7. It is concluded that the warrantless search of Defendant Looney's residence was violative of Looney's Constitutional protection against unlawful search and seizure; that the same was done beyond the reach of Constitutional limitations; and, that the subject weapon was seized during such search and should not be allowed as evidence in the prosecution of the offense charged.

Judgment shall be entered accordingly.