■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAIME MATTA, Appellant.—Appeal by defendant from a judgment of the County Court, Westchester County, rendered September 25, 1978, convicting him of criminal possession of a controlled substance in the seventh degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress tangible evidence. Judgment reversed, on the law, defendant's motion to suppress is granted, the Superior Court information is dismissed and the case is remitted to the County Court, Westchester County, for entry of an order in its discretion pursuant to CPL 160.50. Responding to a radio call advising of an apparent narcotic overdose victim, Detective Benner proceeded to a hospital where he found the unconscious victim and his parents. The boy's father, Richard Masters, told the detective that his son had visited the defendant and that he believed that his son had taken one of his cars which was now missing. Detective Benner and the father returned to the precinct where the detective telephoned the defendant who told the officer that the victim had

visited him and had left in what appeared to be an intoxicated condition. Shortly after the telephone conversation, the missing car was located in the vicinity of the defendant's residence. Masters and Detective Benner went to the car and searched it without finding anything of significance. At Masters' suggestion they then went to the defendant's apartment. Masters knocked on the door and when asked who it was Masters identified himself and asked if Jaime (the defendant) was home. Detective Benner, who was dressed in plain clothes, did not identify himself. A friend of the defendant's reluctantly opened the door stating that he was only a friend. Masters, followed by the previously unseen and unannounced Detective Benner, immediately stepped into the doorway leading to the interior of the apartment. Once inside, Benner observed various items of incriminating evidence (e.g., marihuana seeds and leaves). Immediately thereafter, defendant entered the room, carrying a clear plastic bag containing a substance which proved to be marihuana. Masters began questioning defendant. Detective Benner interjected a few questions and then asked to use defendant's telephone and surreptitiously called a back-up unit. (It is noted that there is a conflict in the testimony of Masters and Benner concerning whether the latter identified himself before or after the telephone call.) When the unit arrived, defendant and his friend were arrested for unlawful possession of a controlled substance. After informing defendant of his *Miranda* rights, Benner asked defendant whether he had anything else, and defendant produced another quantity of marihuana. Benner then sought to obtain the then handcuffed defendant's consent to a full search of the apartment. Defendant refused, and Benner told him that "subsequent to the arrest" he had a right to make such a search anyway. Continued questioning by Masters ensued as to what drugs defendant may have had in his apartment and whether they could have affected his son. Finally, after Masters stated to the defendant that the police would search his apartment anyway, defendant exclaimed that he was "finished", and removed certain items from the top drawer of his dresser. Such items subsequently proved to be hashish, cocaine, and quaalude tablets. Thereafter, a thorough search of defendant's apartment resulted in the police finding a coke spoon, a tray containing what was apparently marihuana and a white powder residue, and some pieces of paper with writing on them. After a felony hearing, it was determined that defendant would be held for action by the Grand Jury. Prior to indictment, defendant moved to suppress all of the tangible evidence seized at his apartment. After a full hearing, the suppression motion was denied. Defendant then waived indictment and pleaded guilty to a Superior Court information. On appeal, defendant again challenges the legality of the seizure of evidence. Upon review, we believe that the suppression motion should have been granted. The instant record allows no inference other than that Detective Benner went to the defendant's apartment in the course of his investigation of the apparent drug overdose taken by Masters' son. Regardless of what factors may have motivated Masters' visit to defendant's apartment, there is little doubt, in view of all the circumstances, that Detective Benner went to the apartment in the expectation of either finding contraband or otherwise uncovering information relevant to the ingestion of a controlled substance by Masters' son. Thus, the visit to defendant's apartment was pregnant with the possibility of the imposition of criminal liability. That the intrusion into the privacy of defendant's home may have been initiated by Masters does not relieve Detective Benner of the responsibilities imposed upon him by the Fourth Amendment. "The Fourth Amendment protects the individual's privacy in a

variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home * * * the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant" (Payton v New York, 445 US 573, 589-590). Certainly, a warrant could not have been obtained based on the information possessed by Detective Benner when he and Masters went to defendant's apartment. Detective Benner's right to enter the apartment was therefore dependent upon the receipt of an authorized consent. What was required was simply that Benner identify himself as a police officer and explain his purpose prior to gaining entry into the sanctuary of defendant's home. Detective Benner's failure to identify himself necessarily precludes a finding of consent. Absent exigent circumstances justifying such nondisclosure, the surreptitious or deceitful entry into a home may not be tolerated (cf. People v Jefferson, 43 AD2d 112). A contrary result would eviscerate the primary purpose of the Fourth Amendment, which is to safeguard the sanctity of the home from physical entry (see Payton v New York, supra; United States v United States Dist. Ct., 407 US 297, 313). Having concluded that Detective Benner's entry into the apartment was unlawful because of his failure to identify himself, the seizure may not be justified by reliance upon the plain view doctrine. The doctrine is inapplicable because the prerequisite of lawful presence in the place of observation (Harris v United States, 390 US 234, 236) has not been satisfied. We note that were we to assume that the initial entry was appropriate, we would still suppress the evidence seized upon the full search of defendant's apartment. Defendant's so-called consent to the search cannot be deemed voluntary. The circumstances were rife with coercive influences which were exacerbated by Benner's blatant misrepresentation that he had a right to search the apartment as an incident to the defendant's arrest. The scope of such a search is generally limited to the parameters of the defendant's "grab-area" (Chimel v California, 395 US 752). We also find that reliance by nisi prius on the emergency doctrine was misplaced. The victim was already being treated and the record contains no evidence that either his life was still in jeopardy or that the actions of Masters and Benner would have any bearing on the boy's condition. Accordingly, were we not suppressing all the evidence because of the illegal entry, we would still suppress the evidence seized from defendant's dresser and the evidence seized as a result of the subsequent full-scale search. Rabin, J. P., Gulotta and O'Connor, JJ., concur.

Cohalan, J., dissents and votes to affirm the judgment, with the following memorandum: In the hope of ascertaining the reason for his son's comatose condition, the elder Masters asked Detective Benner to accompany him to defendant's apartment. Once there, Masters knocked on the door and it was opened by Clinton Gilbert. Gilbert was clad only in underwear and apparently had the run of the apartment. Benner did not reveal his occupation to Gilbert, but did to defendant as soon as the latter entered the room. Before defendant came in from another room, Benner observed what proved to be marihuana seeds and leaves, a metric scale and some small plastic bags situated variously on a coffee table and on a refrigerator. Defendant himself placed a clear plastic bag containing marihuana on a table. When expected reinforcements arrived in the persons of three policemen, defendant was arrested. Up to this point what was done by Benner was perfectly legal and proper, in my view. Gilbert was not the apartment's tenant and Benner was under no obligation to identify or otherwise explain himself or his presence to Gilbert. The contraband in the room in plain sight was sufficient to

sustain the defendant's plea of guilty to criminal possession of a controlled substance in the seventh degree. Defendant contends that absent a search warrant, Benner had no legal right to enter the apartment. The majority agrees, citing *Payton v New York* (445 US 573), which was decided with the companion case of *Riddick v New York*. In *Riddick,* the defendant's apartment was entered without a warrant, although the police had more than ample time to obtain one. Further, in response to a knock, the door was opened by a three-year-old child who could scarcely have been considered as capable of giving consent to the intrusion. Here, however, as noted, Gilbert was an adult and apparently a person who could permit entry, which fact distinguishes it from the *Riddick* case. With respect to the comprehensive search of the defendant's apartment, however, (other than as to the items in plain sight) I am in agreement with the majority that anything seized was the result of an illegal search, and should have been suppressed, but since the plea related to material properly seized the judgment should be affirmed.