**UNITED STATES of America, Appellee,**

v.

**Charles SHELTON, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Andre Raynard JOHNSON, Appellant.**

**Nos. 83–5207, 83–5209.**

United States Court of Appeals,
Fourth Circuit.

Argued May 11, 1984.

Decided June 21, 1984.

---

Roger G. Nord, Fairfax, Va., Thomas T. Heslep, Alexandria, Va., for appellants.

Justin W. Williams, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Clarence H. Albright, Jr., Asst. U.S. Atty., Alexandria, Va., on brief), for appellee.

Before HALL and MURNAGHAN, Circuit Judges, and HERBERT F. MURRAY, United States District Judge for the District of Maryland, Sitting by Designation.

K.K. HALL, Circuit Judge:

Charles Shelton and Andre Johnson appeal from their convictions by a jury of armed bank robbery of the Dominion National Bank in Fairfax, Virginia, in violation of 18 U.S.C. § 2113(a) and (d). They also appeal from the district court's denial of their pre-trial motions to suppress evidence. Finding no error in the proceedings below, we affirm.

I.

On April 21, 1983, at approximately 10:45 a.m., two black males, one of whom was armed, robbed the Dominion National Bank in Fairfax, Virginia, and one of the bank's customers, of $1,902. At trial, Shelton and Johnson were both identified by bank employees as the robbers.

According to the evidence, at the time of the robbery, Arlington County, Virginia Detective E.W. Gabrielson was traveling on Glebe Road near its intersection with Interstate 395, when he heard an Arlington County radio dispatcher announce that a bank in the 2900 block of Annandale Road in Fairfax had just been robbed by two black males. Gabrielson, a fifteen-year veteran of the Arlington Police Force, drove onto Interstate 395 and headed toward Washington Boulevard, which he knew to be a direct link between the bank and the Fourteenth Street Bridge leading into Washington, D.C.

As Gabrielson approached the five-lane Washington Boulevard ramp onto the Interstate, he spotted a green Thunderbird with two black males in the front seat. The automobile, traveling faster than the surrounding traffic, and slightly faster than the speed limit, cut sharply in front of Gabrielson and crossed all five lanes of the road in the space of 200 yards. Gabrielson, who was driving an unmarked automobile, fell in behind the Thunderbird and continued to track the automobile toward the Fourteenth Street Bridge. As the detective followed directly behind the Thunder-

bird, he noticed a third man, previously unseen, who "popped up" in the middle of the rear seat of the car, from what seemed to Gabrielson to be a "laying down position." Gabrielson testified that his suspicion that he was following the bank robbers increased when he saw the back seat passenger removing his jacket and shirt. The detective said he subsequently saw the man in the back seat go back down on the seat three or four times and completely change his clothes.

Gabrielson contacted his dispatcher and requested an identification check on the car's owner, who turned out to be Shelton. Gabrielson was also informed that Shelton had a criminal record for bank robbery. The detective lost sight of the car on Martin Luther King Avenue in southeast Washington, D.C. He subsequently pulled over a Washington, D.C., police car. Another D.C. cruiser, driven by Officer Goodman, accompanied by Officer Scott, also stopped. Gabrielson explained the situation, and the officers obtained Shelton's address at 2508 Pomeroy Road, Apartment 101, in the southeast section of Washington, D.C. Gabrielson and the D.C. officers then proceeded to the top of a hill in the 2400 block of Pomeroy Road where they were joined by Detective R.J. Thiebeau of the Washington Metropolitan Police Department.

Meanwhile, a helicopter piloted by Stanley Roberts, a fifteen-year veteran of the Washington Metropolitan Police Department, was dispatched for aerial surveillance of Pomeroy Road. Roberts' attention focused on a green Thunderbird moving along Stanton Road in the vicinity of Pomeroy Road. Roberts and his partner maintained constant surveillance of the car and relayed their information on the movement of the car and its passengers to the ground officers.

After receiving a helicopter message that two men had fled the Thunderbird up a hill

and through a wooded area, Goodman saw them. He chased after them and, along with Detective Thiebeau and another officer, entered the apartment building at 2508 Pomeroy Road, where Roberts had stated he saw one of the men flee. Goodman knocked on the door to Apartment 101, which had been reported to be Shelton's residence. After two or three more knocks, the door was opened by Shelton, dressed only in trousers and "sweating profusely" on a day that was "rather cool." When Shelton attempted to shut the door on the officers, he was quickly subdued and arrested.[1]

In the meantime, Officer Scott, spotting Johnson exit the Thunderbird on the driver's side of the car, arrested him as he stood near the car.[2] Officer Scott next joined other officers outside the apartment building along the path followed by Shelton and found five $100 bills. Along this same route, another officer located $627 in cash. A warrant was then obtained to search Shelton's apartment and more money was found secreted in a back bedroom.

Defendants, Shelton and Johnson, were subsequently indicted, tried, and convicted. These consolidated appeals followed.

## II.

On appeal, Johnson argues that his warrantless arrest was without probable cause and that the subsequent search of his person was, consequently, unlawful. Shelton contends that his warrantless arrest was likewise unlawful and that the warrant obtained to search his apartment was based upon false and misleading information, in violation of his rights under the Fourth Amendment to the United States Constitution. We disagree with each of appellants' contentions.

■ Appellant Johnson was arrested upon existing a vehicle which was thought

---

1. Another suspect, Tracy Stewart, was also arrested in the apartment, but charges against him were later dismissed by the government.

2. After Johnson was turned over to federal authorities, he was searched. Twenty-one two-dol-

lar bills were found on his person and later introduced at trial. A bank witness testified that two-dollar bills were taken during the robbery.

with good reason to have been used in a bank robbery completed only minutes before the car was sighted. The automobile was seen speeding from the vicinity of the robbery in an erratic and reckless manner. Persons inside the vehicle met the general description of the bank robbers. During the chase, the registered owner was discovered to have a prior record of bank robbery. The passenger in the rear seat of the car had been seen changing clothes during the chase, on an interstate highway, at approximately 11:00 o'clock on a cool morning. Upon its final stop, two persons jumped out of the car and fled up a hill through the woods. It is clear from this record that there was good reason to believe that Johnson, who was arrested exiting the car barely moments after it stopped, had at least some connection with the robbery. Under the totality of the circumstances, it is reasonable to conclude that the police had probable cause to arrest him. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Because the arrest was lawful, the immediate search of Johnson's person was incident to the arrest and the evidence seized as a result of the search was properly admitted. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

### III.

 Shelton argues that the warrantless entry into his apartment and his subsequent arrest were illegal because the entry was not justified by exigent circumstances or the "hot pursuit" exception to the warrant requirement. We disagree. Without doubt, the chase and capture of Shelton were made in the course of a hot pursuit. *United States v. Haynie,* 637 F.2d 227, 235 (4th Cir.1980), *cert. denied,* 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981). Furthermore, the warrantless entry into Shelton's home was required by the exigencies of the moment, including the need to preserve safety and to prevent destruction of the money, part of which had already been abandoned outside the apartment building.

Nor do we accept Shelton's contention that, after his arrest, police officers misrepresented certain facts in the affidavit which they swore out to obtain a warrant to search his apartment. We agree with the government that the affidavit did not contain false or misleading information. We, therefore, find that the district court was correct in concluding that the issuance of the warrant was proper and in denying Shelton's motion to suppress evidence obtained as a result of the search.

### IV.

For the foregoing reasons, appellants' convictions, as well as the district court's order denying appellants' motions to suppress evidence, are hereby affirmed.

AFFIRMED.