**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                      No. 95-5422

THOMAS RODERICK JACKSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, District Judge.
(CR-94-494-A)

Argued: June 7, 1996

Decided: November 1, 1996

Before RUSSELL, WIDENER, and MICHAEL, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Christopher Allen Griffiths, ROBERTS & WOOD,
Riverdale, Maryland, for Appellant. Marcus John Davis, Assistant
United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Doug-
las J. Wood, ROBERTS & WOOD, Riverdale, Maryland, for Appel-
lant. Helen F. Fahey, United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A grand jury in the Eastern District of Virginia returned a four count indictment against Thomas Roderick Jackson on November 23, 1994. Count 1 charged possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii)(II). Counts 2 and 3 charged possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Count 4 charged use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

On December 23, 1994 Jackson moved to suppress evidence seized from his apartment pursuant to a search warrant. After a hearing, the district court denied Jackson's motion on January 20, 1995. At trial on February 7, 1995, Jackson moved for judgment of acquittal on all counts. The court denied the motion with respect to Counts 1 and 4 and took the motion under advisement with respect to Counts 2 and 3. After the jury found him guilty on all four counts, Jackson renewed his motion for judgment of acquittal. The court granted his motion with respect to Counts 2 and 3, which action is not the subject of this appeal.

On May 19, 1995 the district court sentenced Jackson to 33 months' imprisonment and three years of supervised release on Count 1 and 60 months' imprisonment on Count 4, to be served consecutively. On appeal, Jackson challenges the protective sweep of his apartment as an unlawful warrantless search. Jackson's first argument is that there was no justification for a protective sweep. In the alternative, he argues that even if the sweep were justified, the officers exceeded the permissible scope of the sweep by searching in the bathroom vanity and under the bedroom mattress. We affirm the conviction on Count 1, but vacate the conviction on Count 4 on a ground which only became available following trial.

2

I.

Our review of a district court's denial of a motion to suppress is governed by two standards. We review the factual findings underlying the district court's legal conclusions under the clearly erroneous standard, but we review the district court's legal conclusions de novo. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 506 U.S. 926 (1992).

Jackson was wanted on an outstanding arrest warrant in Prince George's County, Maryland for attempted murder by stabbing. Following an anonymous tip on August 16, 1994, the FBI fugitive squad confirmed the existence of the warrant with the Prince George's County Sheriff's Department and ran a computer check that confirmed that Jackson had been convicted of a violent crime in the past involving a firearm and was considered armed and dangerous. Five FBI special agents went to the address given by the anonymous caller. Before going to Jackson's apartment, the agents confirmed with management that Jackson was indeed the tenant of that apartment.

Special Agent Patrick Gibbons testified that at Jackson's apartment door, the agents could hear a male voice and other garbled voices. Agent Gibbons further testified that they could not know how many people were in the apartment. After the agents knocked on the door, Katrina Graham opened the door with the chain lock still attached and the agents identified themselves. As Miss Graham was attempting to close the door, the agents broke through the chain lock and apprehended Jackson.*

While Agents Gibbons and Abbott took care of Jackson, Agents Dixon-Martinez and Regini were with Miss Graham in the bedroom. Prior to placing Miss Graham on the bed, the agents frisked the bed for weapons and found a bag with a white powdery substance in it. Agent Regini testified that they lifted the mattress rather than feeling with their hands because it is common to find needles as well as

_____

*The district court is correct when it states that Miss Graham's intent in whether she was closing the door to remove the chain lock as she testified is irrelevant. Whatever her intent, the agents found it necessary to prevent her from closing the door.

3

weapons under mattresses. Agent Regini reported the baggie to Special Agent Kroboth, who was the supervisory agent.

Agent Kroboth did a protective sweep of the apartment to make sure there were no other individuals present. In the bathroom, Kroboth checked both behind the shower curtain and in the bathroom vanity. The vanity was three feet tall by three feet wide and three feet deep. It was Kroboth's experience that people have been found in vanities that size and smaller. Inside the vanity, he found a triple beam scale.

The agents called the Fairfax County Police Department. The police tested the residue in the plastic baggie and it tested positive for cocaine. Police Investigator Ronquillo Dean then obtained a search warrant based on the cocaine residue and the triple beam scale. Pursuant to the search warrant, we are told, without dispute, the police seized a quantity of cocaine powder and cocaine base, cutting and packaging materials, three scales, a loaded TEC-9 semi-automatic pistol, a .38 Colt revolver, ammunition, and a ballistic vest.

The district court found the protective sweep for additional persons to be reasonable given that the agents knew that Jackson was wanted for attempted murder and that he was considered armed and dangerous. The court found no evidence that the agents intended to search the apartment or to use the sweep as a pretext for finding contraband. The court also found the search of the bed to be entirely appropriate because the agents had every reason to believe that Miss Graham might be in league with Jackson and might have a weapon under the mattress. We are of opinion that the district court's conclusions are proper.

The Supreme Court has defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 327 (1990). The Court also stated that a protective sweep is "confined to a cursory visual inspection of those places in which a person may be hiding." Buie, 494 at 327. "[T]here must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing

4

that the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334.

The officers in this case quickly swept the apartment for individuals posing danger to the officers. The officers did not search through drawers or other areas too small for an individual to hide in. The officers were not certain how many individuals were in the apartment because they heard garbled voices at the door, but they were aware of at least one person other than the defendant in the apartment. The officer who checked the vanity testified that, in his experience, a person has hidden in a bathroom vanity of that size. The vanity was three feet tall, three feet wide, and three feet deep. An adult could fit easily into a space that size. We are of opinion that this sweep satisfies the Buie definition of a protective sweep.

We now turn to the search of the mattress. The law clearly allows for the "search of the arrestee's person and the area `within his immediate control'--construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Chimel v. California, 395 U.S. 752, 763 (1969). In our case, the police frisked the space under the mattress for weapons prior to placing an individual, not the arrestee, on the bed. For the reasons stated below, we are of opinion that the search was reasonable.

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court upheld the frisk of a person for weapons based upon the officer's observation of that individual on the street. Guided by the Fourth Amendment's general prohibition of unreasonable searches and seizures, the Court determined the reasonableness of the officer's actions by balancing "the need to search [or seize] against the invasion which the search [or seizure] entails." Terry v. Ohio, 392 U.S. 1, 21 (bracketed insertions in original) (quoting Camara v. Municipal Court, 387 U.S. 523, 537 (1967)). The Court required "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29.

5

In Michigan v. Long, 463 U.S. 1032 (1983), the Court relied on the principles of Terry and Chimel to uphold the search of the passenger compartment of a car for weapons during a traffic stop. The Court again required "`specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Long, 463 U.S. at 1049 (quoting Terry, 392 U.S. at 21). The Court restated that"[a] gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested." Long, 463 U.S. at 1048 (alteration in original) (quoting Chimel, 395 U.S. at 763). Addressing the dissent's concern that the Court was broadening Terry searches, the Court specifically stated that the area search approved of was "limited to a search for weapons in circumstances where the officers have a reasonable belief that the suspect is potentially dangerous to them." Long, 463 U.S. at 1052-53 n.16.

Maryland v. Buie, 494 U.S. 325 (1990), presented the Court with the situation of a protective sweep of a suspect's home during the execution of an arrest warrant. Although a protective sweep is limited to a search for individuals, not weapons, Buie highlights the Court's overriding concern for the safety of police officers. In Buie, the Court recognized that "unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's `turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings." Buie, 494 U.S. at 333.

The officers in this case knew that the defendant was wanted for attempted murder by stabbing, that he had been convicted of a violent crime with a firearm in the past, and that he was to be considered armed and dangerous. It is reasonable for the officers to think the defendant might have one or more weapons hidden in his bed or under his mattress. Likewise, it is reasonable for the officers to think that Miss Graham might be aware of the existence of any such weapons. See United States v. Hernandez, 941 F.2d 133, 135-38 (2d Cir. 1991) (upholding search of mattress prior to placing handcuffed female, not the arrestee, on the bed). To protect themselves, the officers checked the bed for weapons prior to placing Miss Graham on

6

the bed. Rather than run their hands between the mattress and box spring, the officers lifted the mattress from the box spring to avoid cutting themselves on any needles or sharp objects that might be there. This action was reasonable.

II.

Jackson also argues on appeal that the evidence was insufficient to sustain the conviction under Count 4, use of a firearm in relation to a drug trafficking crime. The government concedes that Jackson's conviction on Count 4 should be set aside in light of <u>Bailey v. United States</u>, 64 U.S.L.W. 4039 (1995). Thus, we vacate Jackson's conviction on Count 4.

Although we affirm Jackson's conviction on Count 1, because he was sentenced on account of Counts 1 and 4, we vacate the sentence in Count 1 and remand for resentencing. The government claims that enhancement under Sentencing Guidelines 2D1.1 will be applicable on resentencing. We express no opinion on that question and are confident the district court will give it consideration on remand.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>