CAMPBELL, Acting Chief Judge.
Appellant challenges the court’s denial of his motion to suppress narcotics and paraphernalia discovered during a search of his home. He maintains first that his consent to search was not made voluntarily, and second, that even if it was the officers’ search exceeded the scope of consent given. We affirm in part and reverse in part.
Having received a tip, either from a citizen or a Fort Meade police officer, that narcotics were being sold from Appellant’s residence, Deputy Beaudry and Detective Hall went to Appellant’s residence to investigate. When they arrived, Appellant’s wife answered the door. Detective Hall explained that there had been reports of narcotics being sold out of the home, and he would like to talk to her about those reports. She invited the officers inside, at which point Detective Hall informed her again of the reason for their visit and asked her if she had any problem with them searching the residence for narcotics. She said she had no problem with it, but wanted to get permission from her Husband, who was somewhere in the back of the house. She went to get him. He came out five minutes later, and Detective Hall repeated what he had told appellant’s wife, asking if he had a problem with them searching for narcotics. Appellant replied that he did not have a problem with that, so long as they did not tear up the house.
The officers proceeded back to the bedroom from which Appellant had emerged. Appellant sat on a stool in front of a craft table while Detective Hall searched the room. After Detective Hall opened a drawer and found cannabis inside, he asked Appellant about it, and Appellant said: “Don’t you need a search warrant?” Detective Hall replied that he did not need a search warrant because Appellant had given consent. At the suppression hearing, Detective Hall was clear that Appellant asked about the need for a search *523 warrant after Hall had found the marijuana.
Detective Hall then spotted a methamphetamine boat, an aluminum foil “boat” used to smoke methamphetamine. The boat was on the table in front of Appellant. When Detective Hall saw it and asked Appellant about it, Appellant grabbed the boat, crinkled it up and threw it in the garbage. When the detective retrieved it, he discovered methamphetamine residue on it. Detective Hall believed Appellant was trying to destroy evidence, and handcuffed him.
At that point, Deputy Stevenson came in. He had been waiting down the street to be sure the officers had consent to search. Deputy Stevenson took Appellant out into the hall and then into a child’s bedroom while Detective Hall continued to search the bedroom. After talking in a child’s bedroom, Deputy Stevenson and Appellant walked back into the master bedroom and asked Detective Hall to leave. Appellant had not been Mirandized and was still in handcuffs. After Detective Hall left, Appellant kicked a footlocker, demonstrating the location of additional contraband. Deputy Stevenson opened the footlocker and found inside a Tupperware container filled with a trafficking amount of methamphetamine.
Appellant first raises the voluntariness of his consent to search, contending first that he was misled into believing that the officers would only “look around,” and second, that he acquiesced to the officers’ ‘authority. We find no merit in this argument, however, because Detective Hall specifically asked to “search,” not to “look around,” and because there is no evidence that Appellant acquiesced to the officers’ authority. This case was nothing like Gonzalez v. State, 578 So.2d 729 (Fla. 3d DCA 1991), cited by Appellant. In Gonzalez, five officers surrounded the house and asked to “look around.” Once inside, they fanned out in drug raid formation and conducted an initial room-to-room search without consent. The court there concluded that the number of officers and their location, staged around the perimeter of the house, was certainly a show of authority that led the occupant of the house to acquiesce to their authority. Under such circumstances, consent cannot be voluntary.
Here, however, only two officers appeared at the door, leaving Officer Stevenson a block away, specifically to allow Appellant to refuse consent; and no search was conducted until Appellant consented. Upon gaining entrance here, the officers did not fan out, but waited in the living room until they had obtained consent. Moreover, officers need not have probable cause to investigate. The officers here had a tip that narcotics were being sold out of the house. That is sufficient to support an investigation.
Having concluded that the consent to search was given voluntarily, we now turn to whether Appellant withdrew that consent.

MARIJUANA

Although we believe that Appellant’s query of Detective Hall as to whether he needed a search warrant probably amounted to a withdrawal of consent, since Appellant did not ask the question until after Detective Hall had discovered the marijuana in the drawer, we conclude that his withdrawal of consent did not apply to the discovery of the marijuana. Accordingly, the marijuana was properly admitted.

METHAMPHETAMINE BOAT

When Appellant grabbed the methamphetamine boat, which was in plain view, and threw it away, that was also clearly a withdrawal of consent. See Jackson v. State, 707 So.2d 775 (Fla. 2d DCA 1998); Parker v. State, 693 So.2d 92 (Fla. 2d DCA 1997); Jimenez v. State, 643 So.2d 70 (Fla. 2d DCA 1994). However, because the officer saw the boat before Appellant withdrew his consent, the boat was admis *524 sible. See State v. Hite, 642 So.2d 55 (Fla. 2d DCA 1994). The boat would have been admissible in any event under the inevitable discovery rule, which provides that if the item would ultimately have been discovered by legal means, it is admissible. See Maulden v. State, 617 So.2d 298 (Fla.1993); State v. Bernard, 650 So.2d 100 (Fla. 2d DCA 1995). Here, given the officers’ discovery of the marijuana in the drawer, they were entitled to arrest Appellant, and to continue searching the area incident to arrest. Because the boat was found on the table where Appellant was sitting and was in plain view, officers could have legally seized it anyway. The officers here immediately recognized it for what it was — drug paraphernalia. There was no mistaking it for a child’s toy. We conclude that the methamphetamine boat was properly admitted.

TUPPERWARE CONTAINER OF METHAMPHETAMINE

The Tupperware container of methamphetamine was discovered inside a footlocker after Appellant, handcuffed, had been interviewed without the benefit of Miranda. He then showed Deputy Stevenson where to look in the bedroom. Clearly, the interview was improper. The only question is whether the Tupperware container also would have been discovered anyway and been admissible under the inevitable discovery theory. Although Detective Hall testified specifically that the footlocker was the next thing he planned to search, that search would have been improper under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In Chimel, the Supreme Court held that an arrest does not justify searching the premises beyond the area where the arrest occurs. Nor does it justify searching closed or concealed areas in the room where the arrest occurs. See McVay v. State, 553 So.2d 331 (Fla. 4th DCA 1989).
McVay is similar to the instant case. McVay’s roommate called officers regarding a domestic disturbance. When police arrived, the roommate asked the officers to go inside and either quiet McVay or ask him to leave. They entered the home and found McVay sitting on a couch. Next to his leg was a small table with lines of a white substance on it. Tucked underneath his leg was a man’s purse with a gun handle protruding out of it. One of the officers accompanied McVay to the bedroom to obtain identification. As McVay opened the closet, the officer shined his flashlight inside to be sure McVay was not reaching for another weapon. The flashlight illuminated a large bag of marijuana. They returned to the kitchen, where McVay was arrested for possession of cocaine, a firearm and marijuana. The officer returned to the bedroom and looked into an unlocked metal box on the shelf directly below where he had seen the bag of marijuana. Inside, he found several bags of marijuana.
The Fourth District concluded that the cocaine found in McVay’s purse was lawfully seized as a part of the search incident to arrest because the purse was within his control. The seizure of the marijuana was in plain view and was also lawful. However, the court found the seizure of the marijuana inside the metal box was unlawful under Chimel. See also Amburn v. State, 701 So.2d 568 (Fla. 2d DCA 1997).
We conclude that a similar analysis applies here. The Tupperware container and its contents should have been suppressed. Accordingly, we reverse Appellant’s conviction for trafficking in methamphetamine, while affirming his convictions for possession of marijuana and possession of drug paraphernalia.
FULMER and SALCINES, JJ., Concur.