DECISION
This matter is before the Court for decision on the Defendant's motion to suppress evidence obtained by a Newport police detective as the result, Defendant posits, an illegal search.
On the evening of November 30, 2007, Lieutenant Russell Carlone, while working a private detail, observed a beige vehicle traveling "very fast" on Girard Avenue in the city of Newport. (Tr. 6.) The vehicle then turned left onto Maple Avenue without displaying a left directional signal. (Tr. 8-9.) Lieutenant Carlone continued to follow the vehicle, in his unmarked car, to the parking lot of the Hill Mart, a convenience store on Connell Highway. He then observed the Defendant, known to him from prior arrests for drug offenses, exit his vehicle "very quickly," close the driver's door and proceed towards the entrance to the market. The Lieutenant immediately got out of his car and exclaimed, "hey, get back here," an order with which the Defendant promptly complied. The Defendant was further instructed to get back into the driver's seat of his car and produce his license and registration. When he opened the glove compartment to retrieve the requested documents, the detective observed a "large amount of money in small bills" fall from the compartment. (Tr. 12.) When Lieutenant Carlone inquired as to the source of the currency, the Defendant asked the Lieutenant if he could make a phone call and stated that, "he just got paid and . . . was opening a restaurant in Newport." (Tr. 13.) The *Page 2 
Lieutenant then asked the Defendant if he had any drugs in the vehicle, and, according to his testimony, the Defendant acknowledged that he had some cocaine which he then handed over to the Lieutenant in a closed black pouch. The Defendant was then arrested for possession with intent to deliver cocaine and was handcuffed and placed in the rear seat of a police vehicle. A subsequent inventory search yielded a half-pound to one pound of marijuana.
On cross-examination, Lieutenant Carlone acknowledged that his only reason for stopping the Defendant was excessive speed; yet, no citation was issued. (Tr. 26-27.) He also testified that once he had ordered the Defendant to return to his car, the Defendant was no longer "free to move." (Tr. 33.)
When the Defendant handed Lieutenant Carlone his registration, the Defendant asked the Lieutenant if he could make a phone call. (Tr. 36-37.)
At no time before the discovery of the contraband was the Defendant informed as to the reason for the stop; nor was he advised of his constitutional rights.
The Lieutenant denied that the Defendant ever refused to allow the search but also testified that he did not "remember ever asking [the Defendant] if [he] could search [the] vehicle" and did not "ever remember [the Defendant] saying no." (Tr. 43.)
The Defendant testified that he "absolutely" knows Lieutenant Carlone because he has been arrested previously by him and questioned by him for drug offenses.
The Defendant explained that he emerged from his car at the Hill Mart and proceeded to walk, in a normal fashion, to the entrance. When he was approximately four feet from the entrance, he was told to "get back into his car" and he turned to observe Lieutenant Carlone. The Lieutenant then asked for the Defendant's license and registration and the Defendant unlocked the door and reached into the glove compartment to retrieve the registration. He denied that *Page 3 
money fell to the floor, stating that the money was secured in separate "stacks" by rubber bands. At the Lieutenant's request, the Defendant handed him the money for inspection, the money was then returned to the Defendant with the question from Lieutenant Carlone, "where's the drugs?" (Tr. 72.) The Defendant denied the presence of any drugs and Lieutenant Carlone then searched his person with negative results. Prior to the latter event, the Defendant had asked the Lieutenant if he could make a phone call and the response was "no don't touch your phone." (Tr. 73.)
The Lieutenant next asked for permission to search the vehicle which the Defendant declined to give because the Lieutenant had "no reason to search the vehicle," the Defendant was not "doing anything wrong," nor was the Defendant aware of why he was being questioned "at all." (Tr. 73-74.)
The Defendant professes to be aware of his legal rights from previous interactions with the police and maintains that he would not have given consent to any vehicle search. (Tr. 74.) The latter testimony was corroborated by a completely neutral citizen observing the event. Edith Viveiros, a 34 year-old taxi driver and receptionist, was present in the parking lot and saw the officers approach the Defendant (after he had exited his car) and order him to "get back in the car." (Tr. 51.) She then saw the Plaintiff unlock the vehicle and "lean in" to "pull out . . . paperwork" which he then handed to the officer. (Tr. 52.) After a brief inaudible exchange occurred between the two, Ms. Viveiros heard the officer state "can I search your car?" to which the Defendant responded "no." (Tr. 52-54.)
The Defendant contends that even if he "had committed the two traffic violations that the officers are alleging occurred, there was still no reason or probable cause to place [him] under arrest upon stopping him at the Hill Mart, and as such, the arrest by Officer Carlone was *Page 4 
unlawful." (Defendant's Memo. p. 3.) Thus, he asserts, the fruits of the subsequent search were obtained in violation of the Fourth Amendment.
The State counters that since the police conduct did not equate to an arrest and that there was probable cause to arrest, the seized items are admissible.
The stop of a motorist for speeding and failure to use a directional signal is obviously valid and indeed the duty of law enforcement officers charged with maintaining public safety. There are no "evidentiary fruits," however, of the traffic violations for which Mr. Lombard was detained. "A rule that gives police the power to conduct a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals." Arizona v. Grant, No. 07-542, slip op. at 2 (U.S. Apr. 21, 2009). In Grant, the defendant had been arrested for driving on a suspended license and was handcuffed and placed in the back of a patrol car. Id. at 2. A search of his car yielded some cocaine in the pocket of a jacket located on the back seat. Id. at 2-3. The Supreme Court held that the "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." Id. at 13 Pursuant to Chimel v. California, 395 U.S. 752 (1969), "police may search the space within an arrestee's `immediate control,' meaning `the area from within which he might gain possession of a weapon or destructible evidence." Chimel, 395 U.S. at 763. *Page 5 
In the instant case, the "arresting" officer actually ordered the Defendant back into his car. Clearly, the officer had no fear that Mr. Lombard, who was well-known to the officer, would retrieve a weapon (safety justification), nor could the officer reasonably believe that there existed destructible "fruits of the crime" (evidentiary justification).
There is no evidence in the record to support any conclusion that probable cause existed to arrest the Defendant for the commission of a crime. The initial detention of Mr. Lombard is legitimized only by the commission of traffic violations for which he was not cited and for which his car could not be impounded. Under ordinary circumstances, a motorist in Mr. Lombard's situation would produce the required documentation, and warned or cited, and allowed to go on his or her way.
Thus, the warrantless search in this case can be validated only if Mr. Lombard furnished his consent to do so. On this point, the most compelling and determinative testimony is contained within the observations of Edith Viveiros. For her, the exchange between the officers and the Defendant was a unique event which had captured her attention. Her completely credible testimony supports the Defendant's assertion that no consent was given. This conclusion is reinforced by the lack of a signed consent-to-search form.
Because the safety and evidentiary "justifications are absent" and no other exception to the warrant requirement can be properly applied, the Court is compelled to deem the search of the Defendant's car unreasonable and exclude the fruits of said search. *Page 1