**UNITED STATES of America, Plaintiff,**

v.

**Jeffrey T. McCANTS, Defendant.**

**C.A. No.: 2:09–CR–458–PMD.**

United States District Court, D. South Carolina, Charleston Division.

Aug. 5, 2009.

Robert Nicholas Bianchi, U.S. Attorneys Office, Charleston, SC, for Plaintiff.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court on Defendant Jeffrey T. McCants' ("Defendant") Motion to Suppress evidence. For the

reasons set forth herein, the Court grants Defendant's Motion.

### BACKGROUND

On January 24, 2009, Defendant's estranged wife, Patti McCants, contacted the Charleston County Sheriff's Office, claiming that Defendant had been threatening her. She provided Deputy Hanna ("Hanna") with six threatening phone messages Defendant had left on her voicemail, which included death threats. Ms. McCants reported that she had taken out a restraining order against Defendant, and had filed reports with police in the past regarding his violent and threatening behavior. She also reported that she wished to press charges against him. Ms. McCants further told police that Defendant had several rifles inside his residence, and had received mental health treatment numerous times in the past. Based upon Ms. McCants' allegations, police decided to make a warrantless arrest on Defendant on charges of Criminal Domestic Violence.

That same evening, deputies, including Hanna drove to Defendant's residence to place him under arrest. When they arrived at his trailer, Defendant himself called 911 from within the home. He was very agitated, and used numerous profanities over the phone with the dispatcher and demanded that the deputies leave his property. At that point, Hanna used the police car's public address system and ordered Defendant to come out of the residence. Deputies allege that they then heard a sequence of loud noises from within the house, which they believed to be Defendant barricading himself in the residence. Hanna once again instructed Defendant to leave the residence and come outside.

Several minutes later, Defendant came out of the front door onto the front porch, shouted angrily and gestured at the deputies, and ran back inside the trailer. Deputies called Defendant on his home phone, but there was no answer. Hanna continued to use the car's public address system to instruct Defendant to come outside the residence. After several more minutes of this, Defendant once again exited the residence through the front door. He came out shouting angrily, using profanities and telling deputies to "kill me" and "shoot me." At this point, Hanna and Deputy Bolander ("Bolander"), who were waiting near Defendant's front porch, attempted to taser Defendant. However, the taser had no effect, and Defendant reportedly told deputies, "your toy ain't working on me." Hanna then kicked Defendant in the chest, knocking him to the ground. Even though Defendant continued to resist arrest, deputies ultimately subdued him, and he was handcuffed and restrained with leg irons on his front yard. At this time, deputies asked Defendant a series of questions, including whether or not anyone else was inside the residence. Defendant refused to respond to any of these questions, and continued to shout incoherently. Defendant was arrested for Criminal Domestic Violence, as well as Unlawful Use of a Telephone, Resisting Arrest, and Threatening the Life of a Public Official.

While two deputies waited outside the residence with Defendant, Bolander and Deputy Russell ("Russell") entered Defendant's trailer through the front door. In a room to the right of the main entrance, deputies found several guns in plain sight. They found several more guns in a closet to this room, which was located in the back corner of the trailer. In all, three rifles and two shotguns were taken into custody by the deputies.

On April 15, 2009, Defendant was indicted by a federal grand jury for being in possession of five firearms after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1). On May 16, 2009, Defendant

filed a Motion to Suppress Evidence, seeking to suppress the introduction of the firearms in question, asserting that they were seized from his home in violation of his Fourth Amendment rights. The Government filed its Response in Opposition to the Motion on July 16, 2009. A hearing was scheduled on this Motion and held in Charleston, South Carolina, on July 23, 2009. At the conclusion of the hearing, this Court informed the parties that Defendant's Motion to Suppress was granted, but that an Order giving a more detailed explanation would be forthcoming.

## ANALYSIS

The Fourth Amendment states, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

### I. Lawful Arrest

The Government asserts that the five weapons seized from Defendant's house were taken by deputies pursuant to a lawful arrest, and in the alternative, pursuant to a lawful protective sweep. The Government bases its incident to a lawful arrest on certain language in The Supreme Court of the United States' decision in the case of *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). There, the Supreme Court held that "as an incident to the arrest the officers could, as a precautionary matter and without probable cause and reasonable suspicion, look in closets or other spaces *immediately adjoining the place of arrest* from which an attack could be immediately launched." *Id.* at 334, 110 S.Ct. 1093 (emphasis added). However, the Court also emphasized that the search must be "no

more than necessary to protect the officer from harm." *Id.* at 333, 110 S.Ct. 1093. Police are allowed to perform these sweeps to protect themselves from the possibility of any sort of attack by an accomplice to the suspect, and should not use these sweeps as a pretext for criminal investigation.

The proper interpretation of this language in *Buie* was a major point of contention between the two parties. Defendant asserted that this was merely a restatement of the longstanding rule that police have the ability to search the area immediately surrounding a suspect's person to protect their own safety. This rule, commonly called "the wingspan rule" because it essentially only encompasses the area within which a suspect could reach out and grab something, was first established by the Supreme Court in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

However, the Government disputes that this language in *Buie* is referring to a search incident to an ordinary search incident to arrest. Instead, the Government asserts that this falls into a hybrid category of protective sweep which may be performed immediately incident to arrest. This hybrid sweep would not require the same burden of information as an ordinary protective sweep, but would be much more limited in scope. The Fifth Circuit agrees with Plaintiff's interpretation of this particular language in *Buie*, and has summarized these different types of searches and sweeps thusly:

First, incident to an arrest, law enforcement officers may contemporaneously search areas within the arrestee's immediate control to prevent the destruction of evidence or procurement of a weapon. Second, officers may search areas immediately adjoining the place of arrest, such as closets or other spaces, from

which a surprise attack could occur. Probable cause or reasonable suspicion is not necessary for these first two variations. Third, officers may also perform cursory "protective sweeps" of larger areas if they have articulable facts plus rational inferences that allow a reasonable officer to suspect that an individual dangerous to the officers is within the area to be searched.

*United States v. Mata*, 517 F.3d 279, 285 (5th Cir.2008) (citations omitted). The Government does not assert that this was a search incident to a lawful arrest pursuant to *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which is restricted to the area of the suspect's immediate control. Rather, the Government's first contention is that this search was conducted of the areas immediately adjoining the site of his arrest.

However, this Court need not decide on the proper interpretation of *Buie* in the present case, because even if the Court agrees with the Government and recognizes a hybrid form of immediate protective sweep, the deputies in this case far exceeded the permissible scope of such a sweep. According to the Government, Defendant was arrested very close to his front door. Inside his trailer, the guns were also located near the front door. The Government argues that this was a lawful search of the areas immediately adjoining the place of Defendant's arrest. The United States Court of Appeals for the District of Columbia Circuit has noted that when someone is arrested *in* the doorway of a room, that room is an "immediately adjoining" locale to the place of arrest. *United States v. Whichard*, 304 Fed.Appx. 887 (D.C.Cir.2008).

However, in this case, Defendant was not only not in a doorway which immediately adjoined a room, he was outside of the residence completely. Unlike the *Whichard* case, in which law enforcement

officers were already lawfully in the residence and were justified in looking in the next room to make sure there was no one else there laying in wait for them, here Defendant was in his front yard and there was no part of the interior of Defendant's residence which was "immediately adjoining the place of his arrest." To rule for the Government on this issue would have very dire Fourth Amendment consequences-specifically, any time a suspect was arrested on a porch or near their front or back door, police would automatically gain the ability to go inside the residence and search at least the area or areas near that door without any information at all that there might be someone inside that posed a threat to them. The law does not allow this.

While the Supreme Court has recognized that there is a necessary balance between one's right to privacy and the need for law enforcement officials to ensure their own safety, the Supreme Court has consistently shown a heightened regard for the right to privacy in one's home. The Government can cite to no precedent, and this Court is aware of none, where any court has held that the arrest of a suspect near the door of a residence automatically allows police to circumvent the warrant requirement (and even the information burden necessary to conduct a protective sweep) and gain the ability to "sneak a peek" inside the residence in question. In fact, some courts have implicitly held the exact opposite. *See, e.g., United States v. Stover*, 474 F.3d 904, 911 (6th Cir.2007) ("[D]uring a search incident to an arrest *occurring inside a home*, officers may 'as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could immediately be launched.'") (quoting *Buie*, 494 U.S. at 327, 110 S.Ct. 1093) (emphasis added). Furthermore, several

of the guns were not only inside Defendant's trailer, but inside a closet within the trailer. This, then, went beyond merely looking around to ensure the safety of the officers because they assert Defendant was arrested in very close proximity to the front door. Instead, officers, who lacked probable cause and had no search warrant, walked into Defendant's trailer through the front door and proceeded to search the entire residence, including closed closets.

## II. Protective Sweep

■ In the alternative, the Government also contends that the Court should hold that the guns were lawfully discovered pursuant to a protective sweep. The *Buie* Court defined protective sweep as "a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." 494 U.S. at 327, 110 S.Ct. 1093. Police may undertake a protective sweep if an officer "possesses a reasonable belief based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the officer in believing" that there is an individual posing some sort of threat to the officer or others in the area being swept. *Michigan v. Long*, 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Here, Defendant was arrested outside his trailer. Courts have found that if a suspect is arrested outside his or her residence, but there are articulable facts from which a reasonable officer believes that there is an individual inside the residence in question who poses a danger to the officer, the officer or officers may conduct a protective sweep on the interior of the residence. *See, e.g., United States v. Hoyos,* 892 F.2d 1387, 1397 (9th Cir.1989),

*cert. denied* 498 U.S. 825, 111 S.Ct. 80, 112 L.Ed.2d 52 (1990) ("A bullet fired at an arresting officer standing outside a window is as deadly as one that is projected from one room to another."). The issue before the Court, then, is whether or not the officers at the scene had "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that [Defendant's trailer] harbor[ed] an individual posing a danger to those on the arrest scene." *Buie,* 494 U.S. at 334, 110 S.Ct. 1093.

The Government claims that it did, in fact, have articulable facts from which it could have reasonably assumed that there was someone in the trailer who posed a danger to the officers and others. Officers claimed that they heard a lot of noise being made in the trailer before Defendant came outside to be arrested, from which they assumed someone was trying to barricade the doors of the trailer. Officers also claim that the windows of Defendant's trailer were covered in black tape, so they could not see inside the trailer. They further assert that Defendant refused to answer the question of whether or not there was anyone else inside the residence. Therefore, the Government claims that after Defendant came outside of his trailer, they had a reasonable suspicion that there was someone else inside the trailer who posed a danger to them.

However, these reasons are essentially that officers heard a noise coming from the trailer while Defendant, who was obviously quite agitated and volatile, was still inside the trailer, that they could not see inside the trailer, and that Defendant refused to acknowledge any of their questions. But these facts and inferences only indicate that the officers were not completely certain that there was not someone else inside the trailer. However, the Government has

not given any reason why police would have believed the noise was made by anyone other than Defendant, or why the fact that they could not see inside the residence made them think that someone else was inside. Furthermore, the fact that Defendant refused to answer officers' question about whether or not anyone else was inside the residence is of no probative value given that Defendant was yelling incoherently at the time and not responding to *any* of the officers' questions. While the test of "a reasonable belief based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the officer in believing" that someone in the residence poses a threat of violence to the officers or others may be substantially less than probable cause, it is also far stricter than the Government's interpretation seems to assume. Courts applying the *Buie* standard require far more evidence to justify a protective sweep. For example, the Eighth Circuit upheld a protective sweep when the following facts and inferences were present:

(1) the surveillance officers observed Davis going to and from his barn twice in two hours, from which they could infer that he had contact with an accomplice (or accomplices); (2) three to four vehicles and a trailer were parked on the property, which could indicate the presence of accomplices; (3) the officers had prior intelligence of individuals coming to the property to manufacture methamphetamine; (4) prior intelligence indicated that Davis possessed firearms, which could indicate a danger to officer safety; (5) the officers had been informed that Davis associated with dangerous and violent persons, which also could indicate a potential danger to officer safety; and (6) surveillance cameras were attached to the house, which could indicate the heightened possibility of a surprise attack.

*United States v. Davis,* 471 F.3d 938, 945 (8th Cir.2006). While this analysis was not a listing of elements which must be or should be satisfied by law enforcement, it provides a useful illustration of the types of factors examined by courts in applying the "articulable facts" standard.

Here, by contrast, officers have not claimed that they observed anyone else in the trailer, they have not claimed that Ms. McCants or anyone else gave them any indication that there may be someone else in the trailer with Defendant, and they have not claimed that they heard any other voices coming from within the trailer, or that the 911 operator who took Defendant's call heard any other voices on the phone. Furthermore, protective sweeps are generally associated with arrests arising out of various forms of conspiratorial offenses, where police can logically and justifiably assume that a suspect has close criminal associates who may be willing to take dangerous and violent actions to ensure that the suspect is not taken into custody. Here, however, police were coming to arrest Defendant on a charge of criminal domestic violence, a charge which involved only his own conduct.

While this Court fully appreciates that police officers run into dangerous situations on a day to day basis, and understands that they must be able to take reasonable precautions to protect themselves, this must be balanced with suspects' right to privacy. In this case, police lacked articulable facts and inferences from which a reasonable officer would have believed that there was someone who posed a danger to the safety of the officers waiting inside the trailer. If this Court were to validate the Government's protective sweep in this instance, it would essentially be validating any future protective sweeps of suspects' residences where police are simply unsure whether there is

someone else in the residence or not, which would be virtually all cases. The Fourth Amendment will not allow such a sweeping exception to the warrant requirement, and so Defendant's Motion to Suppress must be granted.

### *CONCLUSION*

For the foregoing reasons, it is therefore **ORDERED** that Defendant Jeffrey T. McCants' Motion to Suppress Evidence is **GRANTED.**

**AND IT IS SO ORDERED.**